SISK *v.* STATE OF INDIANA.

[No. 28,821. Filed February 20, 1953. Rehearing denied April 23, 1953. Certiorari denied U. S. Sup. Ct. October 12, 1953.]

*Theodore Lockyear* (deceased), and *Russell S. Armstrong*, of Evansville, for appellant.

*J. Emmett McManamon*, former Attorney General, and *Edwin K. Steers, Jr.*, Attorney General, and *William T. McClain, John Ready O'Connor* and *Owen S. Boling*, Deputy Attorneys General, for appellee.

JASPER, J.—Appellant was charged by indictment, under §10-3401, Burns' 1942 Replacement, with murder in the first degree. A motion to quash was filed by appellant and overruled. Thereafter a plea in abatement was filed, to which appellee filed a demurrer. The trial court sustained the demurrer. A plea of not guilty was entered. Trial was had before a jury and a verdict of guilty of first degree murder was returned. Judgment was entered on the verdict and appellant was sentenced to life imprisonment.

Appellant first contends that the trial court erred in sustaining appellee's demurrer to the plea in abatement. Under the plea in abatement, appellant asserts that he was incarcerated in the Vanderburgh County Jail prior to the impaneling of the grand jury which indicted him; and that, under §9-811, Burns' 1942 Replacement, he was denied the substantial right of appearing before the court to challenge members of the grand jury, and that, because of the denial of this right, his statutory and constitutional rights were invaded. As a further ground, under the plea in abatement, appellant contends that he was denied the right to a preliminary hearing, and therefore his conviction is invalid.

Section 9-811, Burns' 1942 Replacement, provides as follows:

"A person held to answer a charge for a felony or misdemeanor may challenge an individual grand juror before the jury is sworn, for one or more of the following causes only:

"First. That such individual grand juror is a minor.

"Second. That he is not a freeholder or a householder of the county.

"Third. That he is an alien.

"Fourth. That he is insane.

"Fifth. That he is the prosecuting witness upon a charge against the defendant.

"Sixth. That he is a witness on the part of the prosecution.

"Seventh. That such a state of mind exists on his part in reference to the party charged that he can not act impartially and without prejudice to the substantial rights of the challenger.

"Eighth. That he holds his place in the grand jury by reason of the corruption of the officer who selected and impaneled the grand jury.

"Ninth. That he is in the habit of becoming intoxicated.

"Tenth. That he has requested, or caused any officer or his deputy to be requested, to place him upon the grand jury."

Section 9-812, Burns' 1942 Replacement, provides as follows:

"Such challenge may be oral. If the facts alleged be denied, the challenge must be tried at once by the court, and the juror challenged may be examined as a witness to prove or disprove the challenge, and he is bound to answer every question pertinent to the inquiry therein. The challenger, and other witnesses then present, may also be examined on either side, and the rules of evidence applicable to the trial of other issues shall govern the admission or exclusion of testimony on the trial of the challenge;

but the matter must be summarily heard, and the court must allow or disallow the challenge."

It is well settled that the proceedings of a grand jury is not a trial. *Adams* v. *State* (1938), 214 Ind. 603, 17 N. E. 2d 84.

Appellant asserts that the failure to take him before the grand jury prior to their being sworn was a violation of his constitutional rights under Article I, Sections 12 and 13, of the Constitution of Indiana, and the Fifth, Sixth, and Fourteenth Amendments to the Constitution of the United States.

The Fifth and Sixth Amendments to the Constitution of the United States apply only to the Federal Government, and do not apply to state governments. *Hanks* v. *State* (1948), 225 Ind. 593, 76 N. E. 2d 702; *Gaines* v. *Washington* (1928), 277 U. S. 81, 48 S. Ct. 468, 72 L. Ed. 793; *Brock* v. *North Carolina* (Decided February 2, 1953), 344 U. S. 424, 73 S. Ct. 349, 97 L. Ed. 317. (Advance Sheets.)

Article I, Section 13, of the Constitution of Indiana, provides:

"In all criminal prosecutions, the accused shall have the right to a public trial, by an impartial jury, in the county in which the offense shall have been committed; to be heard by himself and counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor."

This section does not apply to the rights of an accused to challenge the polls in impaneling a grand jury. Appellant fails to show that any of his rights were contravened under this section.

Appellant's plea in abatement does show that he appeared in the City Court of Evansville on September 12,

1950, where an affidavit charging him with the crime of murder was filed, and that the City Court bound him over to the Circuit Court to await the action of the grand jury. Appellant was in City Court while this proceeding took place. On September 18, 1950, the grand jury was impaneled and sworn. Appellant was taken to the court house, in a room adjacent to the court room, where he remained while the grand jury was impaneled, sworn, and instructed by the court.

The above facts show that appellant knew he was being held to answer a charge before the grand jury. The right under §9-811, Burns' 1942 Replacement, is permissive and may be waived by appellant. Appellant, knowing he was held to answer a charge before the grand jury, failed to make any request to appear before the court at the impaneling of the grand jury. The failure to request permission to so appear was a waiver of his right to do so. In 38 C. J. S., Grand Juries, §28e, p. 1017, it is said:

> "The right to be present at the impaneling of the grand jury and to make a challenge either to the polls or to the array is held to be a substantial right, the denial of which by the court renders the grand jury incompetent to sit on the case, and it has been held immaterial that the challenge of accused might have proved ineffectual. However, in the absence of express statutory provision to the contrary, it is generally held that there is no absolute right on the part of an accused person absent or in confinement to be brought into court for the purpose of challenging a grand jury, and that failure on his part to ask permission to appear and make his challenge at the proper time is a waiver of the privilege, and this is especially true where it is not shown that a valid cause of challenge existed, or that he was prejudiced by his absence.
>
> "Objection that one was not allowed to be present while the grand jury that found an indictment against him was being impaneled, and to challenge grand jurors, is waived by a plea of not guilty."

It is said in 24 Am. Jur., §28, pp. 852, 853, Grand Jury:

"Objections to the legality of the organization of the grand jury may be made by any one under prosecution for an offense about to be submitted to the consideration of the jury. It has been held that if the prisoner is denied the privilege of making such objection, the denial constitutes ground for a new trial. But the prisoner must apply for leave or request permission to appear and make objection. It is not the duty of the court to bring him into court for the purpose of exercising this privilege."

Appellant having waived his right to appear in court to challenge the poll, could not thereafter file a plea in abatement to challenge individual grand jurors. *Williams* v. *State* (1919), 188 Ind. 283, 123 N. E. 209; *Pontarelli* v. *State* (1932), 203 Ind. 146, 176 N. E. 696; *Mack* v. *State* (1932), 203 Ind. 355, 180 N. E. 279, 83 A. L. R. 1349; *State ex rel. Reichert* v. *Youngblood* (1947), 225 Ind. 129, 73 N. E. 2d 174.

The plea in abatement further failed to show that the body as constituted was composed of any persons not examined and qualified to sit as grand jurors. It failed to show that any of the grand jurors were subject to any statutory causes for challenge. *Anderson* v. *State* (1941), 218 Ind. 299, 32 N. E. 2d 705. There was no charge of fraud or corruption, and no showing was made that a substantial right of appellant had been prejudiced. *Weer* v. *State* (1941), 219 Ind. 217, 36 N. E. 2d 787, 37 N. E. 2d 537.

Appellant's failure to assert in his plea in abatement any statutory grounds for challenge to any of the grand jurors, or to the grand jury, was grounds for the sustaining of the demurrer to the plea in abatement. See *Gilmore* v. *State* (1951), 229 Ind. 359,

98 N. E. 2d 677. The failure to take appellant before the grand jury was not a violation of the Fourteenth Amendment to the Constitution of the United States or of Article I, Section 12, of the Constitution of Indiana, because the right to appear before a grand jury in Indiana is a statutory right, and the proceedings before a grand jury is not a trial. *Adams* v. *State* (1938), 214 Ind. 603, 17 N. E. 2d 84, *supra*.

Appellant was afforded due process, and this constitutional right was satisfied when he was present in court when convicted of a crime after having been fairly apprised of the charges against him, and after a fair trial in accordance with constitutional procedural safeguards. *Frisbie* v. *Collins* (1952), 342 U. S. 519, 72 S. Ct. 509, 96 L. Ed. 541; *Humphrey* v. *Smith* (1949), 336 U. S. 695, 69 S. Ct. 830, 93 L. Ed. 986; *Blood* v. *Hunter* (1945), 150 F. 2d 640.

Appellant contends as a further ground for his plea in abatement to the indictment that he was never accorded a preliminary hearing in the City Court of Evansville when taken before it although he requested such hearing.

Appellee, having filed a demurrer to the plea in abatement, admitted these facts well pleaded. *Turpin* v. *State* (1934), 206 Ind. 345, 189 N. E. 403.

The plea in abatement shows that appellant was bound over to the Circuit Court to await action of the grand jury. The grand jury indicted appellant. Appellant was represented by counsel in the trial of his case. He was tried by jury and found guilty. He was given a fair trial in accordance with constitutional and procedural safeguards.[1] *Frisbie* v. *Collins* (1952), 342 U. S. 519, 72 S. Ct. 509, 96 L. Ed.

1. See *Blood* v. *Hunter* (1945), 150 F. 2d 640, *supra*.

541, *supra*. This satisfied due process. The preliminary hearing was not jurisdictional to the return of the indictment.[2] See *Humphrey* v. *Smith* (1949), 336 U. S. 695, 69 S. Ct. 830, 93 L. Ed. 986, *supra*. Appellant was not harmed by the refusal of a preliminary hearing. His rights were not prejudiced. The plea in abatement was properly overruled.

Appellant further contends that the trial court erred in denying his motion to suppress evidence and for the return of property, for the reason that the search of his automobile was illegal in that it was searched without a search warrant.

Appellant asserts two grounds to sustain this position— (1) that the arrest was illegal, and therefore the search and seizure were also illegal; and (2) that the search was illegal even if the arrest was proper. We shall dispose of these in that order. In *Doering* v. *State* (1874), 49 Ind. 56, 58, 59, this court said, in discussing an arrest without a warrant:

> "A peace officer has a right to arrest without a warrant, when he is present and sees the offence committed. He has a right to arrest without a warrant, on information, where he has reasonable or probable cause to believe that a felony has been committed; and herein there is a distinction as to the extent of his authority. In cases of misdemeanor, the officer must arrest on view or under a warrant; in cases of felony, he may arrest without a warrant, upon information, where he has reasonable cause."

The last-cited case states the rule followed today. *Arthur* v. *State* (1949), 227 Ind. 493, 86 N. E. 2d 698; *Perkins* v. *State* (1934), 207 Ind. 119, 191 N. E. 136; *Pettit* v. *State* (1935), 207 Ind. 478, 188 N. E. 784.

2. See 42 Yale Law Journal, p. 163, for a discussion of preliminary hearings.

The record reveals the following:

Frank F. McDonald, Sheriff of Vanderburgh County, was notified of the death of Benjamin Harrison Hancock between the hours of 5:00 and 6:00 in the morning of September 3, 1950. He went to Thoni's Service Station, on Highway 41, North, in Vanderburgh County, and there found Hancock's body on the floor of the service station with a pickax driven into his skull. The Sheriff stated: "After I pulled the pick out of Mr. Hancock's head, and the funeral director was called, we turned the body over and it became very evident to me that Mr. Hancock had been murdered by someone while in the commission of a robbery. Underneath his body were $4.00 in bills neatly folded, apparently in his hands when he was felled." Mr. McDonald interviewed Kenneth Burlison, an attendant at the service station, who detailed to the Sheriff the general operation and procedure in conducting the business, and stated to the Sheriff that there had been a man sleeping at the station, in his automobile, whose name the attendant did not know. He gave a description of the man, but was unable to give a positive identification of the automobile. He told the Sheriff that a man, later identified as Rufus Glenn Sisk, had been at the service station on the morning of September 3rd. Burlison checked out with the deceased at midnight, turning over to him $379.43, and left the station some time after that, and at that time appellant was at the station. Investigation showed that money was customarily hidden around the service station. Money had been hidden in the compartment of the cigarette machine. The Coroner, according to the Sheriff, fixed the death of Benjamin Harrison Hancock at around 4:00 a. m. on September 3rd. After the body was released, the Sheriff said: "I assembled my men back to the office. We sat down and started

going over the evidence trying to locate the man that had been known to sleep in the automobile there."

John Brantley, a city bus driver, communicated with the Sheriff, and stated that a man about six feet tall, weighing between 155 and 160 pounds, approximately thirty-five years of age, with brown hair and a high forehead, had talked with him and appeared to be "drunk, dopey, or silly." He said that this man wanted to park his automobile at the Star Filling Station and get a cab to go to the airport to charter an airplane. The time of this conversation was fixed at 1:00 a. m. on September 4th. The Sheriff checked with the cab company and learned that the run to the airport was made with the man in question. Investigation at the airport led to the discovery that a man named Rufus Glenn Sisk had attempted to charter a plane for New Mexico.

From Ira Musgrave, an attendant at the airport, it was learned that a cab driver brought Rufus Glenn Sisk to the airport, and that the man talked with the witness about chartering an airplane to go to New Mexico, and that he told him the approximate cost would be $300. The witness did not state that appellant gave any reason for wanting to go to New Mexico. He told appellant that he could give him the exact figure in about thirty minutes, and the cab left, and in approximately thirty minutes appellant returned and was given the exact figure—$503.12—for chartering the airplane. He examined his roll of money and counted out $438 to $440, and said that he would return as soon as he got the rest of the money. The witness saw appellant's union cards as he was going through his billfold and noted his name. The name "Rufus Glenn Sisk" was given to the Sheriff by the witness. The witness identi-

fied the automobile in which appellant drove to the air-port as a 1935 or 1936 "black or dirty" Plymouth. Appellant told him he was employed by Swift & Co. After this information was received from the witness, the night watchman at Swift & Co., and a Mr. Bunch, a foreman on the docks, were called to the plant where personnel records were checked as to appellant. It was determined that he made $1.30 an hour. On the basis of this information, major highways in the county were checked and the officers conducted a search for appellant driving the described automobile.

The Deputy Sheriff who arrested appellant knew that a robbery had been committed, and that they were looking for appellant for the purpose of arrest-ing him for the crime of robbery. The Deputy Sheriff had obtained the last-known residence of appellant and was watching the neighborhood at the time of seeing appellant enter his automobile. He was apprehended while sitting in his automobile, and the arrest was made there by the Deputy Sheriff without a warrant. Appellant was taken to the jail, and his auto-mobile was immediately towed to the jail and there searched. The evidence was found above the glove com-partment behind the dashboard. It consisted of money with blood on it. Among the money was a $50 bill which was identified as having been in the hands of the de-ceased before his death.

The facts show that the officer had reasonable and probable cause[3] to believe that a felony had been com-mitted by appellant, and therefore the arrest was legal. Ewbank, Criminal Law, 2d Ed., §247, p. 150.

The arrest being legal, was it illegal to search appel-lant's automobile? The record reveals that appellant

3. See *Rohlfing* v. *State* (1949), 227 Ind. 619, 88 N. E. 2d 148, for what constitutes probable cause for issuing a search warrant.

was arrested while sitting in his automobile,[4] and that he was taken to the jail in the Sheriff's automobile. A search and seizure extends to the effects of the party arrested and to the property under his control. *Carroll* v. *United States* (1925), 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543. An automobile has been classified as an "effect," and the search of an automobile made incidental to lawful arrest has been held by this court not to be an unreasonable search and seizure. *Pettit* v. *State* (1935), 207 Ind. 478, 188 N. E. 784; *Haverstick* v. *State* (1925), 196 Ind. 145, 147 N. E. 625; *Jameson* v. *State* (1925), 196 Ind. 483, 149 N. E. 51; *Arthur* v. *State* (1949), 227 Ind. 493, 86 N. E. 2d 698, *supra*. The fact that the automobile was towed to the jail before being searched did not make the search illegal, since the towing in and the search immediately followed the arrest. The search of the automobile was not unreasonable and was an incident to appellant's lawful arrest. See 79 C. J. S., Searches and Seizures, §67e, p. 845.

The motion to quash and the objections made to the introduction of evidence were properly overruled.

Appellant further contends that the trial court erred in permitting a witness for appellee to answer an impeaching question when appellant had not taken the witness stand. Appellant, in his brief, failed to cite any authority, or to show none was available, to sustain his contention. *Harrison* v. *State* (1952), 231 Ind. 147, 106 N. E. 2d 912. Therefore, under our Rule 2-17(e), he waived the question attempted to be presented.

Finding no error, the judgment is affirmed.

NOTE: Reported in 110 N. E. 2d 627.

---

4. See *Sugarman* v. *United States* (1929), 35 F. 2d 663, and Cornelius, *Search and Seizure*, 2d Ed., §66, p. 229, for right to search a standing automobile.