BRANNON, BURTON *v.* STATE OF INDIANA.

[No. 29,437. Filed May 7, 1957. Petition for rehearing denied June 11, 1957. (Petition for stay of execution pending appeal to U. S. Supreme Court denied.)]

*H. Wayne Baker,* of Bedford, *Norval K. Harris,* of Sullivan and *William C. Erbecker,* of Indianapolis, for appellant.

*Edwin K. Steers,* Attorney General, and *Owen S. Boling,* Deputy Attorney General, for appellee.

EMMERT, J.—This is an appeal from a judgment on a verdict convicting appellants of automobile banditry and sentencing them to the Indiana State Prison for 10 years. Appellants assign error here in overruling their motion for new trial, which challenged the sufficiency of the evidence to sustain the verdict and the admission of certain evidence on search and seizure.

At about 3:00 A.M., on the morning of October 1, 1954, the alarm system at the Fairbanks Branch of the Peoples State Bank of Farmersburg, located in Fairbanks, Indiana, went into operation. The system was connected with the switchboard of the local telephone company; the operator on duty immediately contacted the cashier of the bank, Mr. Floyd Thomson, who lived about two blocks north of the bank. He picked up a

twelve gauge shotgun and three shells containing number 8 bird shot, and walked down to the bank. He stopped on the north edge of the premises at the bank building. From within the building he heard a "metallic" noise from which he inferred that someone was in the bank pounding on the metal door of the vault. He also heard the combination and heavy handle on the vault door drop to the floor. After some 8 or 10 to 15 minutes, two men came out of the rear door of the bank. Mr. Thomson ordered them to halt and, when they did not halt, fired, aiming behind them. The shot hit the side of a small white coal shed at the rear of the bank against which the two men were outlined. Both men broke and ran south. One turned behind the bank building and was seen no more by Mr. Thomson. The other turned west in front of a volunteer fire station which stood next to the bank.

Mr. Thomson pursued only a short distance, then turned and proceeded north along State Road No. 63 in the direction of his home. As he walked he heard a car start west of him, and a short time later observed it traveling slowly north on a street to the west of road 63, and not showing any lights. The car turned east toward road 63, flicking its lights on and then off, and still moving very slowly. It stopped when it reached the intersection on road 63. As it started to move again Mr. Thomson called to the driver to stop. The car did not stop and he fired again, aiming at the right front fender and tire from a distance of about 50 to 60 feet. The shot apparently had no effect, and the car turned north on road 63 and rapidly accelerated, showing lights after it was 40 or 45 rods up the road. Mr. Thomson described it as a heavy, late model, two-toned car, with the body light grey or pastel and the top a little darker.

The bank building had been locked at the close of business on September 30, 1954. Upon returning to the

bank in the company of the sheriff and several police officers shortly after the event described above, Mr. Thomson discovered that one of the windows had been pried open, the combination and handle of the door of the vault had been knocked off, and the door itself had been scratched and marked in an unsuccessful attempt to pry it open. Various tools such as crow bars and a sledge hammer were found along the route of pursuit described by Mr. Thomson.

Appellants concede that the foregoing constitutes substantial evidence that the crime of burglary in the second degree was committed. They argue that there is insufficient evidence (1) that the burglars had on or near the premises a 1954 DeSoto automobile by means of which they intended to escape, as charged in the affidavit, and (2) that they were the perpetrators of the crime.

As to the first point we think it is obvious that the car on which Mr. Thomson fired was used by at least one of the burglars to make his escape. Someone started his car at about 4:00 A.M. in that area of a very small unincorporated village where one of the burglars had just been seen, drove very slowly and without lights for several blocks to the intersection on road 63, failed to halt upon challenge by Mr. Thomson, and rushed away, turning on his lights, after being fired upon. The logical inference is the burglars had parked the car near the scene of the burglary, and intended to escape therein.

The evidence identifying appellants as the burglars depends upon more details. Mr. Thomson could not positively identify either defendant. He did state that they were similar in height, stature, build and profile to the two men whom he had seen outlined against the bank and coal shed, and that appellant Brannon was similar in these respects to the man whom he had pursued in front of the fire station.

Following the report of the burglary the police were looking, in accordance with Mr. Thomson's information, for a two-toned, late model automobile, the right front fender of which had been fired upon by Mr. Thomson with a shotgun. For reasons not described in the record, two officers were looking for the two-toned 1954 DeSoto automobile which belonged to appellant Brannon. At about 3:30 P.M. on September 30th, a resident of the Westwood Trailer Court located just outside of Plainfield, Indiana, had seen the accused Burton drive up in a Cadillac automobile, park it near the trailer belonging to the accused Brannon, get into the 1954 DeSoto with Brannon and drive away. Mr. Brannon's other car, a Buick, and the Cadillac, which, as later investigation revealed, was registered in Mr. Burton's name, remained at the trailer court. Testimony from other residents and from police patrolling the trailer court at various times during the night and early morning, established that the Buick and Cadillac were there all night and that the DeSoto did not come back that night. On the following morning at about 8:00 A.M., the two police officers mentioned above observed defendant Brannon drive into the trailer court in his DeSoto, park and go into his trailer. They followed him into the court and observed the car. It was two-toned with a tan body and a darker brown top. The right front fender displayed a large number of small marks and indentations indicating a well distributed shot pattern from a shotgun blast. The diameter of the pattern was from a foot and a half to two feet. At this point one of the officers called Mr. Brannon out of his trailer, identified himself and his partner as police officers and arrested him. He then took Mr. Brannon to the police station in Plainfield. The DeSoto car was taken to the same station, where pictures were taken and a more thorough examination made. The

right front tire had white sidewalls and the white portion showed several black marks consistent with the shot pattern on the fender. It also showed a small bulge or raised section. From this section police recovered a pellet which according to expert opinion at the trial was a number 8 pellet from a shotgun shell similar to those which Mr. Thomson used in his shotgun.

. This evidence justifies the inference that the appellant Brannon's car was the one fired upon by Mr. Thomson, and in conjunction with the testimony of Mr. Thomson as to height, build and profile of the men he pursued, this was sufficient to identify Brannon as one of the burglars.

The identification of the appellant Burton rests on the foregoing and the following additional circumstances: The Westwood Trailer Court at which Mr. Brannon lived was from 75 to 100 miles from the town of Fairbanks. As noted above, the appellant Burton was seen at about 3:30 P.M. on September 30th leaving the trailer court with Mr. Brannon in the DeSoto car. The Cadillac belonging to Mr. Burton remained at the trailer court all night long and was there the following morning. Shortly after 2:00 P.M. on October 1st, an official State Police car, equipped with red lights and siren and marked with the department insignia, was in the vicinity of Farmersburg, Indiana, which we judicially know to be approximately ten miles from Fairbanks via the main highways and a somewhat shorter distance across country. The officer driving noticed a man walking up a gravel country road and proceeded in his direction. As the car approached the man started running and turned off the road into a pasture. The police officer crashed his car through a wire fence and pursued across the pasture. As he approached, the man stopped and without any order or request from those in the police car raised his

hands above his head and walked 10 or 15 feet in the direction of the oncoming car. At this point the fugitive, whom the police officer identified in court as the appellant Burton, was apprehended.

Shortly after his arrest he said he was thirsty but that he had not walked too far. The same afternoon he stated he did not know anyone in the area where he was arrested, that he had no business there, that he "flew down" with a copilot, and that he hadn't had any lunch.

We think that the record shows a sufficient identification. Burton was seen entering the escape car in the company of Brannon near Plainfield on the afternoon of September 30th. A man whom he resembled in height, build, profile and stature was involved in a burglary with Brannon at Fairbanks, some 75 to 100 miles away, in the early hours of October 1st. That afternoon he was apprehended in the vicinity where the burglary had been committed after a flight from a well marked police vehicle. When first sighted he was walking down a fairly remote country road, in an area where he had no acquaintances and no business reasons to be, while his Cadillac automobile, a considerably superior means of locomotion, was miles away at the trailer court where he had left it.

This identification, however, as well as the identification of the appellant Brannon rests ultimately on testimony with regard to the DeSoto automobile, to which testimony both defendants objected at trial, and the admission of which they assign as error here. They contend that the search of the *trailer park* and the seizure of the automobile were both in violation of the constitutional prohibition of unreasonable searches and seizures.[1]

1. "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seiz-

The rules governing the search and seizure of automobiles are not in dispute in this case. Because of the ease and rapidity with which they can be moved, search of automobiles may be made without a search warrant if there is, at the time the search is made, probable cause to believe that the automobile in question was used in the commission of a felony. *Pettit* v. *State* (1934), 207 Ind. 478, 188 N. E. 784; *Idol* v. *State* (1954), 233 Ind. 307, 119 N. E. 2d 428; *Enlow* v. *State* (1955), 234 Ind. 156, 125 N. E. 2d 250. The dispute centers around appellants' claim that the entire trailer court was the "home" of Mr. Brannon, and that consequently the entrance of the police without a warrant was an unauthorized intrusion. Since the subsequent discovery of the shot pattern on the fender of the DeSoto could not authorize the search retroactively, any evidence relating to the car would be incompetent. *Dalton* v. *State* (1952), 230 Ind. 626, 632, 105 N. E. 2d 509, and cases cited therein.

Appellants' contention raises the question of whether the peculiarly modern form of dwelling place and premises known as a trailer court falls within the traditional conception of a home within which one enjoys constitutional protection against unauthorized intrusion. The circumstances of this case, however, do not require us to decide this intriguing question. The preliminary examination out of the presence of the jury reveals that there was a sign at the entrance to the trailer court reading "10 Miles per Hour—Private Drive." Other testimony, however, shows that the State Police and the County Sheriff's office patrolled regularly in and through the court, which was outside of the

---

ure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized." Section 11, Article 1, Constitution of Indiana.

corporate limits of Plainfield. We must presume that such patrolling and the police protection it conferred were with the consent, actual or implied, of the owner and residents of the trailer court. It follows that the police officers had the right to be where they were and to inspect the exterior of the DeSoto automobile which was parked in front of a trailer belonging to the appellant Brannon with two of its wheels on the roadway. *Koscielski* v. *State* (1927), 199 Ind. 546, 158 N. E. 902. The seizure, which followed after inspection had revealed Mr. Thomson's shotgun "brand" on the right front fender and which occurred after the arrest, was clearly justified under the rule of probable cause and as an incident of a lawful arrest. *Pettit* v. *State* (1934), 207 Ind. 478, 188 N. E. 784, *supra; DeLong* v. *State* (1929), 201 Ind. 302, 308, 168 N. E. 22, and cases cited.

Other asserted errors in the motion for new trial have been waived.

The judgment is affirmed.

Achor, C. J., Arterburn, Landis and Bobbitt, JJ., concur.

NOTE.—Reported in 142 N. E. 2d 215.