DURRETT ET AL. *v.* STATE OF INDIANA.

[No. 30,826. Filed September 22, 1966. Rehearing denied November 22, 1966.]

*N. George Nasser* and *Paul M. Messick,* of Terre Haute, for appellants.

*John J. Dillon,* Attorney General, and *Kenneth M. Waterman,* Deputy Attorney General, for appellee.

RAKESTRAW, C. J.—This is an appeal from an action in which both of the appellants were convicted of first degree burglary after a trial to the court. They were each sentenced to the Indiana State Prison for a period of not less than ten years nor more than twenty years, and disfranchised for a period of ten years.

After their conviction, there was a motion to correct an improper sentence, a motion for new trial, and a supplemental motion for a new trial. All of these motions were overruled by the trial court. The motion for a new trial was 24 pages in length and contained 34 alleged specifications of error. The assignment of error contains eight specifications of error, most of which are duplications of matters set forth in the motion for new trial. For the sake of clarity, the issues will be grouped and taken up in the order as argued in the appellant's brief, and we will consider as waived any specifications of error not argued in the appellant's brief.

I. The appellants first maintain that they should have been

discharged because more than three terms of court had elapsed without the fault of the appellants.

On the morning of the trial, the appellants, after court had convened, asked permission to state an oral motion for discharge and to follow it up at a later time with a written motion for discharge. Said motion in essence alleged that the September, 1964 term of court, the November, 1964 term of court, and the February, 1965 term of court had elapsed without the defendants being tried, and without any delay being caused by the defendants. There was some colloquy between court and counsel concerning some agreement as to time of trial. The appellants did not offer any testimony in support of their motion for discharge, and the matter was submitted to the court on the record only.

An examination of the record shows that earlier at various times the defendants filed motions for continuance, a motion to suppress evidence, and a motion for a change of venue from the Judge. After the change of venue was taken from the judge, the defendants discharged their counsel and new counsel were obtained. At the time defendants' counsel withdrew their appearance, the defendants requested time to secure counsel. After the appellants secured new counsel, there was a delay of some indefinite period of time to allow the new counsel to familiarize themselves with the case and to allow the appellants to be out on bond so that they could earn money to pay their counsel. The matter was finally set for trial on October 5, 1964.

On that date, the state filed a motion for continuance because of the unavailability of a witness. The continuance was consented to by the appellants.

Later, on April 6, 1965, when the appellants and their counsel were present in court, the case was again set for trial on June 11, 1965, without any objection. The trial did take place on the latter date.

It is obvious from the record that after a special judge was selected, there were informal arrangements between the

special judge and the counsel concerning a trial date. It is a reasonable assumption that these informal arrangements could have continued up to the time the case was set for trial.

It has been held that a defendant in a criminal case need not take the initiative and ask for a trial setting in order to be entitled to a prompt trial. It is the obligation of the court and the state to make appropriate arrangements for trial. *Zehrlaut* v. *State* (1951), 230 Ind. 175, 102 N. E. 2d 203.

However, it is also true that a defendant seeking discharge under the statute involved [Burns' Ind. Stat. Anno. § 9-1403 (1956 Repl.)] has the burden of alleging and showing that he did not contribute to or cause the delay. *Epps* v. *State* (1963), 244 Ind. 515, 192 N. E. 2d 459; *State* v. *Beckwith* (1944), 222 Ind. 618, 57 N. E. 2d 193; *Sullivan* v. *State;* 215 Ind. 343, 19 N. E. 2d 739, *Flick* v. *State* (1939), 215 Ind. 343, 19 N. E. 2d 739; *Alyea* v. *State* (1926), 198 Ind. 364, 152 N. E. 801.

If the defendant did not in fact contribute to the delay, it would have been a simple matter to offer testimony showing that he took no action contributing to the delay and showing that there was time during which the case could have been tried. This the appellants did not see fit to do. By going to trial without submitting evidence to establish the necessary facts to entitle them to discharge, the appellants have waived their right to a prompt trial as defined by the relevant statutes.

It is also interesting to note that the appellants did not present their motion to the court prior to the beginning of the trial as required by law. It is only with the cooperation of the court in entering a nunc pro tunc entry that any motion is shown filed prior to the beginning of the trial. Certainly good practice would have dictated that the motion be prepared and filed in advance of the trial date and that testimony be offered in support of such motion before the trial.

II. The appellants next argue that they were sentenced under Burns' Ind. Stat. Anno. § 10-701 (1956 Repl.) and that they should have been sentenced under § 10-705. Section 10-701, *supra,* reads as follows:

"(a) Whoever breaks and enters into any dwelling-house or other place of human habitation with the intent to commit any felony therein, or to do any act of violence or injury to any human being, shall be guilty of burglary in the first degree, and on conviction thereof shall be imprisoned not less than ten [10] years nor more than twenty [20] years and be disfranchised and rendered incapable of holding any office of trust or profit for any determinate period." [Acts 1941, ch. 148, § 4, p. 447.]

Section 10-705, *supra,* reads as follows:

"Whoever, in the daytime, breaks and enters into any dwelling-house, kitchen, smoke house, outhouse, shop, office, storehouse, warehouse, mill, distillery, pottery, factory, barn, stable, schoolhouse, church, meeting-house or building used for the purpose of religious worship, watercraft, car-factory, freight house, station-house, depot, railroad car, interurban or streetcar, with intent to commit the crime of larceny, shall, on conviction, be imprisoned in the county jail not less than ten [10] days nor more than six [6] months, or in the state prison not less than one [1] year nor more than fourteen [14] years." [Acts 1905, ch. 169, § 375, p. 584.]

This question was first raised by the appellants by filing a "Motion to Correct Improper Sentence" purportedly under Supreme Court Rule 2-40B after the conclusion of the trial. It was followed by a "Supplemental Motion for New Trial," based on the overruling of the "Motion to Correct Improper Sentence."

The appellants maintain that since § 10-705, *supra,* specifically refers to "in the daytime" that is the more particular statute, and the one which more specifically fits this offense and that therefore the sentence should have been made under this statute.

It has long been settled that it is the province of the Legislature to define criminal offenses and to set the penalties

for such criminal offenses. There are many factual situations where a charge could be brought under one of several different statutes. Indeed, on some occasions, charges have been brought in alternative counts with the different counts being based upon different criminal statutes. It is sufficient if the indictment or affidavit charges and the evidence proves an offense under a statute, even though the charge might have been brought under a different statute providing a lesser penalty. 15 I. L. E. Indictments and Affidavits § 41—42, p. 563; *Morgan* v. *State* (1926), 197 Ind. 374, 151 N. E. 98; *Myers* v. *State* (1883), 92 Ind. 390.

In this case, the charge was made under § 10-701, *supra.* The allegations of the affidavit follow the requirement of that statute and the evidence tends to support those allegations. It therefore was not error to sentence the appellants under this section.

III. Finally, the appellants maintain that the finding of the court is not sustained by sufficient evidence and that the finding was contrary to law. It is important to note at this point that there is no question but that on the evidence presented, the finding of the court was proper. Even the appellants do not maintain that the evidence actually presented does not support a finding of guilt. It is their argument that much of the evidence which was admitted was improperly admitted, and that without the evidence which they claim to be improper, there would not have been sufficient evidence to justify the finding of guilt.

In order to dispose of this question, it is necessary to present a brief summary of what the evidence shows.

Julia Reed saw both appellants in a car driving down the street. One was redheaded and was wearing a white shirt. She then saw them a short time later in Mrs. Gilmore's back yard just outside the door on the porch. She also noted that the appellant Harris had red hair and long sideburns. When she accosted them, she was told that they wanted to inquire

about renting a garage. Mrs. Harris sent them around to talk to Mrs. Gilmore.

Viola Gilmore was raking leaves in her front yard. She saw both of the appellants as they came around her house on the east side from the back. They asked about renting her garage. Immediately after they left her, she checked in her bedroom and found her vanity drawer and jewelry boxes open and empty. She described various items of jewelry which were missing. She called the police. The police were given a description of the automobile in which the appellants were riding and a description of each of the appellants. Police officers then found the automobile and the appellants from the description given. They first took the appellants to Mrs. Reed and Mrs. Gilmore, and when they were identified by Mrs. Reed and Mrs. Gilmore, they were arrested and their automobile was searched. The missing jewelry was found in the automobile. Shortly after their arrest, they admitted entering the house and taking the jewelry, and signed written confessions to that effect.

The primary argument made by the appellants is that at the time of the arrest, the police officers had no valid reason to make an arrest, and that therefore the evidence discovered after the arrest and in the search were not properly available at the trial. The appellants argue at length that the arrest was made on suspicion only. In response to leading questions, the police officers stated that the arrest was made on suspicion.

However, we are not concerned with the labels which may arbitrarily be placed upon any given fact situation. In this case, the police were furnished with sufficient reliable information to believe that a felony had been committed by the appellants. They were furnished with a detailed description of an automobile and with detailed descriptions of the two appellants. The information relayed to the police was sufficient to constitute probable cause for a belief that the appellants had committed a felony and it is of

course elementary that police officers may make an arrest and may make reasonable searches incidental thereto where they have probable cause for believing a felony has been committed. *Brannon, Burton* v. *State* (1957), 236 Ind. 680, 142 N. E. 2d 215; *Havener* v. *State* (1955), 234 Ind. 148, 125 N. E. 2d 25; *Sisk* v. *State* (1953), 232 Ind. 214, 110 N. E. 2d 627; *Pettit* v. *State* (1934), 207 Ind. 478, 188 N. E. 784.

The appellants' argument in this section of the brief is long and involved. A great many authorities are cited. However, we do not find any citation of authority which seems pertinent to the facts involved in this case. It is our opinion from the evidence in the record that the arrest of the appellants was justified and that the search incidental thereto was reasonable. This being the case, the evidence was properly admissible, and if admissible, it amply sustained the judgment of the trial court.

Since we find no reversible error, the judgment of the trial court is affirmed.

Arterburn and Myers, JJ., concur. Jackson, J., concurs in the result. Achor, J., not participating.

NOTE.—Reported in 219 N. E. 2d 814.