ANTHONY DAVID NEWMAN *v*. STATE OF INDIANA.

[No. 172A41. Filed December 12, 1972.]

*Walter E. Bravard, Jr.,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Colker,* Assistant Attorney General, for appellee.

WHITE, J.—The evidence most favorable to the State establishes that defendant and another man were caught by police in the act of ransacking a dwelling about noon one day while the residents thereof were at work. At his trial on a first degree burglary charge defendant unsuccessfully attempted to establish solely by his own testimony, a reasonable doubt that his participation was what it appeared to be. He maintained that he was an innocent dupe of his companion who had asked defendant to drive him to that house so that the companion could pick up the clothing of a girl friend. She had been living at the house with her aunt and uncle but was moving in with her boyfriend. The trial judge, sitting without a jury, obviously did not believe the defendant nor was he required to even though his testimony was not directly refuted nor his credibility attacked. *Coleman* v. *State* (1971), 257 Ind. 439, 275 N.E.2d 786, 788, 28 Ind. Dec. 37, 39. Defendant's court-appointed appeal counsel has succeeded in making a plausible argument that the evidence is insufficient to establish defendant's guilt, but did so only by ignoring the evidence most favorable to the state. We see no reason to recite in detail the evidence which established the breaking and entering with intent to commit theft, nor to mention the undisputed facts which are inconsistent with defendant's explanation of his presence at the scene. Neither should it be necessary for us to repeat that an appellate court looks only to the evidence most favorable to the State in determining sufficiency of the evidence and will not

weigh the evidence or determine credibility. *Taylor* v. *State* (1972), 259 Ind. 25, 284 N.E.2d 775, 31 Ind. Dec. 709; *Stock* v. *State* (1966), 247 Ind. 532, 219 N.E.2d 809, 9 Ind. Dec. 121; *Barnes* v. *State* (1965), 246 Ind. 485, 205 N.E.2d 539, 5 Ind. Dec. 158.

Inasmuch as the breaking and entering took place in the daytime, defendant argues that instead of the first degree burglary sentence (10-20 years imprisonment) he was given under Ind. Ann. Stat. § 10-701 (Burns 1956 Repl.), he should have been sentenced to the lesser penalty (ten days to six months in jail or one to fourteen years in prison) provided by § 10-705 for "whoever, in the daytime, breaks and enters into a dwelling-house . . . with intent to commit the crime of larceny". The Indiana Supreme Court has rejected the same argument and we are bound by its decision. *Durrett* v. *State* (1966), 247 Ind. 692, 697, 219 N.E.2d 814, 817, 9 Ind. Dec. 111, 115.

The testimony of the husband and wife whose dwelling house, or "place of human habitation" was broken into testified that they resided there but were not at home at the time because they were both at their places of employment. Defendant misconstrues *Smart* v. *State* (1963), 244 Ind. 69, 190 N.E.2d 650, and *Carrier* v. *State* (1949), 227 Ind. 726, 89 N.E.2d 74, when he cites them as authority "that a breaking and entering of 'a place of human habitation', not occupied at the time by humans, warrants at best a finding of second degree burglary." *Carrier* involved "a summer fishing camp on the creek" (227 Ind. at 729) not being used as a residence and *Smart* "a frame cabin of rustic design used as a summer cottage" (244 Ind. at 71). Neither was ever a residence or dwelling house and neither was being used as a place of human habitation at the time of the burglary. Because the wife admitted that her home was a place of human habitation makes it no less a home. It is first degree burglary to break and enter with intent, etc.

"any dwelling-house or *other* place of human habitation."[1] It is only an *"other* place of human habitation" which ceases to be an object of first degree burglary when temporarily unoccupied, but "when the dwelling house is left empty temporarily . . . it still remains a home. . . ." (*Smart,* 244 Ind. at 74.)

Finally, that defendant intended, at the time he entered, to commit theft is reasonably inferred from the testimony of the police officers and the residents of the house that it was disarrayed, clothing thrown about, and a cloth sack or pillow case full of miscellaneous items sitting in the living room and the fact that a gun belonging to one of the residents was taken from defendant's companion when he was arrested in the house.

Judgment affirmed.

Buchanan, P.J., and Sullivan, J., concur.

NOTE.—Reported at 290 N.E.2d 133.

---

1. Ind. Ann. Stat. § 10-701 (Burns 1956 Repl.), IC 1971, 35-13-4-4. Emphasis ours.