EDDIE LEE FRASIER *v.* STATE OF INDIANA.

[No. 873S149. Filed June 4, 1974.]

*Richard Milan,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Glenn A. Grampp,* Deputy Attorney General, for appellee.

ARTERBURN, C.J.—On January 30, 1973, a jury convicted Appellant of violating the 1935 Firearms Act (unlicensed possession of a gun) and of armed robbery. Appellant was sentenced to ten (10) years on the gun-possession charge and thirty (30) years on the armed robbery charge.

Appellant has raised numerous issues. Some of his specifications of error relate to the armed robbery charge alone, and some to the gun-possession charge, and some refer to the overall conduct of the trial itself. We reverse the trial court's judgment on the gun-possession charge. The evidence, from the viewpoint most favorable to the State, *Blackburn* v. *State* (1973), 260 Ind. 5, 291 N.E.2d 686, and cases cited therein, is simply that Appellant was a passenger in an automobile stopped by a Deputy Sheriff. Both the driver and Appellant, who was riding in the front passenger seat, got out of the car and stood at the rear of the car. A gun-fight developed between the driver and the Deputy Sheriff. Subsequent to this gun fight, in which the driver of the car was killed, the Appellant was arrested. A search of the car revealed a pistol lying on the passenger's seat. These meager facts do not support, as a matter of law, an inference that beyond a reasonable doubt Appellant once possessed this gun.

We affirm the conviction for armed robbery. We next consider those specifications of error which relate to that charge as well as those which involve the general conduct of the

trial. The following additional facts are relevant to the issues raised by Appellant.

On the night of August 28, 1972, two men with guns robbed Mr. and Mrs. Larry Bosley in the Bosley's apartment. Moments after the robbery and in the vicinity of the Bosley's apartment, which was an area of frequent burglaries, Deputy Sheriff Fields, without knowledge of the robbery, routinely stopped a Volkswagen with a noisy muffler. Using a flashlight to glance inside the car, the Deputy saw in plain view a "tire tool or pry bar protruding from a brown paper sack" lying on the floorboard between the two seats. The Deputy's experience suggested to him that such an object was a frequent burglar tool. At the command of the Deputy, the two occupants of the car got out and stood at either rear side of the car. The Deputy then reached down and opened the paper sack. He discovered that the object was a tire tool and that the sack contained three pink, rubber gloves and a hunting knife. His suspicions further aroused, the Deputy approached the two men and asked for identification. The driver drew an automatic pistol and the Deputy heard the pistol "click." The Deputy shot and killed this man. Appellant ran to the right front of the car but surrendered when the Deputy fired at him through the rear window. Subsequently, the car was searched at the scene and many items seized which were introduced as evidence at trial. The robbery victims were brought to the scene and there identified both the dead man and Appellant as the two men who had minutes earlier robbed them.

Appellant believes that the many items of evidence found in the car should have been excluded from the trial because they were the fruits of an illegal, unconstitutional search. *Mapp* v. *Ohio* (1961), 367 U.S. 643, 81 S. Ct. 1684, 6 L.Ed.2d 1081. Appellant's reasoning is that the Deputy had no probable cause to look into the paper sack and that the ensuing shootout and search of the car were caused by this original search. Thus, runs Appellant's

argument, the tainted fruits of that search must be excluded. We do not decide this point for the reason that we decide this issue pursuant to *Gustafson* v. *Florida* (1973), 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456. *Gustafson, supra,* held that police officers effecting a valid custodial arrest for a traffic offense may thoroughly search the arrestee even absent the need to disarm or the need to seize evidentiary items which had been the justifications previously used for searches incident to valid arrests. As the United States Supreme Court said in the companion case to *Gustafson, supra:* "It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment." *United States* v. *Robinson* (1973), 414 U.S. 218 at 235, 94 S.Ct. 467 at 477, 38 L.Ed. 2d 427 at 441.

In Indiana an inadequate muffler is a misdemeanor. IC 1971, 9-8-6-36 [*Burns Ind. Ann. Stat.* § 47-2230 (Code Edition)]. A Deputy Sheriff may arrest any person violating any law of this state in his presence. IC 1971, 35-1-21-1 [*Burns Ind. Ann. Stat.* § 9-1024 (1956 Repl.)]. Acting within this authority, the Deputy asked for identification. Since he had the right to make an arrest and a search incident thereto, he had the right to make the considerably lesser intrusion of a request for identification. The ensuing assault on the Deputy validates the subsequent search of the car and seizure of the items therein. *Chambers* v. *Maroney* (1970), 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419; *Brannon, Burton* v. *State* (1957), 236 Ind. 680, 142 N.E.2d 215; *Sisk* v. *State* (1953), 232 Ind. 214, 110 N.E.2d 627.

Appellant claims that his identification by the robbery victims at the scene of the shooting violated due process of law in that the circumstances were overly suggestive. *Stovall* v. *Denno* (1967), 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199. The inquiry, as fomulated

by the United States Supreme Court, is "whether . . . the confrontation was so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law." *Stovall, supra,* 388 U.S. at 302. Our confrontation cases [*Sawyer* v. *State* (1973), 260 Ind. 597, 298 N.E.2d 440 (photographs); *Wright* v. *State* (1972), 259 Ind. 197, 285 N.E.2d 650; *Dillard* v. *State* (1971), 257 Ind. 282, 274 N.E.2d 387] have crystallized the duty of the reviewing court to the basic inquiry of whether or not the witness was, in fact, influenced by the totality of the circumstances in a manner which indicates a "very substantial likelihood of misidentification." *Sawyer, supra,* 298 N.E.2d at 443. Under the particular circumstances of this case, Appellant is able to isolate numerous circumstances which suggest what Justice Hunter recognized as the inherent suggestiveness of "any one-on-one confrontation." *Wright, supra,* 285 N.E.2d at 653. But in the case before us these circumstances are outweighed by the fact that the victims knew Appellant prior to the robbery. Additionally, witness Larry Bosley, one of the robbery victims, testified that his on-the-scene identification was not based on anything the police said to him that night. We think the totality of the relevant circumstances does not indicate a "substantial likelihood of misidentification."

Appellant makes an objection to the admission into evidence of each of sixteen (16) different items of evidence. The grounds for objection in each instance are that either a proper foundation or a sufficient chain of custody had not been established for any of the sixteen (16) items. Appellant does not, relative to each item, specify in what way the foundation laid or the chain of custody shown was inadequate. Consequently, we can only say that in our opinion each item was sufficiently connected to Appellant to constitute a proper foundation, *Rose* v. *State* (1972), 258 Ind. 377, 281 N.E.2d 486; *Dixon* v. *State* (1963), 243 Ind. 654, 189 N.E.2d 715; *Smith* v. *State* (1961), 241 Ind. 598, 172 N.E.2d 673, and that within the guidelines of *Bonds* v. *State* (1973), Ind.

App., 303 N.E.2d 686, proper chain of custody was established for the non-fungible kinds of evidence involved in this case. Moreover, the items of evidence here at issue were all cumulative evidence. There was an in-court identification of Appellant as the armed robber. Therefore, any error, with respect to the admissibility of these items of evidence would be harmless since Appellant in showing how the alleged error was prejudicial to his cause, *Turner* v. *State* (1972), 259 Ind. 344, 287 N.E.2d 339, and cases cited therein, merely asserted that some of the items "were specifically introduced by the State of Indiana to influence the jury and to prejudice the defendant" which is not even an assertion that defendant was in fact prejudiced.

Appellant asserts that a photograph of his dead alleged accomplice and the narration of that shooting incident by the Deputy Sheriff should not have been admitted as evidence because they are irrelevant to the crimes charged, armed robbery and unlicensed possession of a firearm. The proper form for this kind of objection would be that the evidence lacks "materiality." That is, it does not tend to prove or disprove a proposition in issue. 12 I.L.E. *Evidence* § 41 (1959). Nevertheless, the evidence here in dispute was part of the res gestae and was material for the reason that it tended to show flight, which is a circumstance relevant to the commission of a crime, and tended to show reasons for possession of a gun, which is obviously a necessary element of a charge of unlawful possession of a gun.

Appellant suggests that his identity as one of the armed robbers was not sufficiently established since a minor discrepancy existed between the description given by the robbery victims to a sheriff's deputy who came to their apartment, and the clothing worn by the Appellant when he was apprehended. However, the decisive fact is that both victims made *in court* positive identification

of appellant as one of the two men who robbed them on the night in question.

Another contention made by Appellant is that the trial judge abused his discretion in allowing the State to re-open its case-in-chief in order to prove the age of Apellant. However, since Appellant totally fails to indicate why the re-opening was an abuse of discretion we have no showing that Appellant was prejudiced by the court's decision.

Appellant's attorney has submitted an affidavit that through an undescribed source Appellant's attorney learned during the deliberation of the jury that the bailiff had had an improper conversation with the jury. Specifically, it is alleged that a juror asked whether sentences would run consecutively or concurrently. The bailiff said he would speak to the judge. He did, and the judge instructed him to tell the jury that the question could not be answered. Instead, the bailiff told the jury that the sentencing of the defendant was up to the judge. The State has not replied to this contention, either by submitting counter-affidavits or by argument. The rule for situations of this kind is as follows:

> "When an irregularity such as this occurs harm will be presumed, and if the irregularity is not explained, a reversal of the judgment should follow. However, if an explanation for the alleged misconduct is offered, and if this Court is satisfied that no harm or prejudice resulted, then the judgment of the trial court will not be disturbed."

*Conrad* v. *Tomlinson* (1972), 258 Ind. 115 at 123, 279 N.E.2d 546 at 551. The important point is not who offers an explanation but that this Court be satisfied that "no harm or prejudice resulted" from the misconduct of the bailiff. In the case at bar, Appellant suggests that the bailiff's improper remark could have influenced undecided jurors to vote guilty in the belief that the judge would mitigate

such a vote by light concurrent sentences. However, jurors had before them the possible verdict forms. The verdict forms reveal on their face the punishment to be inflicted. Moreover, the trial judge told the voir dire panel that "the amount of penalty is to be set by the jury in it's (sic) verdict." Therefore, we are convinced that the jury was not misled in their deliberations.

Another allegation of error by Appellant is that an Indiana State Bar Association publication entitled "Handbook for Indiana Jurors" which was distributed to the panel contained material prejudicial to Appellant's Fifth Amendment rights. The material complained of was the following descriptive passage:

"The court room trial events are substantially the same in both civil and criminal cases. In all criminal cases the plaintiff is the State of Indiana and the plaintiff's lawyer is the Prosecuting Attorney or a Deputy Prosecuting Attorney . . .

6. Defendant's Evidence
A. Witnesses for Defendant
    (1) Direct examination by defendant's lawyer.
    (2) Cross-examination by plaintiff's lawyer.
    (3) Re-direct examination by defendant's lawyer.
B. Exhibits for Defendant (These may be submitted during the questioning of witnesses).
7. Defendant Rests
8. Plaintiff's Rebuttal Evidence
    (Same as Number 4 above, except that this evidence is confined to answering the defendant's evidence.)"

Appellant's argument is that this passage creates an implication that a defendant has a duty to testify. We see no such implication available to men of ordinary ways of thinking and reasoning. Furthermore, we think any possible misunderstanding would have been cured by the trial judge's admonishment, in response to Appellant's complaint about the Handbook, to the jury that "the Defendant is not required to testify by law and constitution, and if

he does not, this should not be considered or commented upon by the jury."

Appellant's final specifications of error relate to instructions. Appellant believes that the evidence did not warrant the following instruction:

> "The flight or attempt to escape by a person immediately after the commission of the crime with which he is charged, if there was such a flight, is a circumstance to be considered by you in connection with all the other evidence to aid you in determining the question of his guilt or innocence."

Defendant's argument is that what appeared to be flight—running, when the shooting occurred, from the back of the car to the front—was merely a reaction of fear and apprehension for one's own safety. Such an interpretation is for the jury. An instruction on a certain theory in a case is proper if within the issues and there is any evidence to support it. *Moore* v. *Funk* (1973), 155 Ind. App. 545, 293 N.E.2d 534. A court in determining whether an instruction is applicable to the evidence must consider all reasonable inferences which might be drawn from the evidence. *John Hancock Mut. Life Ins. Co.* v. *Gordon,* (1941), 109 Ind. App. 58, 32 N.E.2d 727.

Appellant asserts that those instructions (22A, 22B) which encompassed the multiplicity of possible verdicts were "long and cumbersome; they are unclear and relatively impossible to understand." These assertions, offered without specific examples or elucidation, are too general and too vague to be of consequence. We can not fathom the significance of an instruction being "relatively impossible to understand." The jury either understood or it did not. We have been offered no reason by Appellant to think that the jury did not understand.

In his "Motion to Correct Errors" Appellant preserved an objection to a certain instruction. Then, in his brief Appellant did not discuss the issue preserved by his Motion

To Correct Errors. However, in his Reply-Brief Appellant attempted to discuss the issue for the first time but the instruction and the objection thereto were not quoted. Rule AP. 8.3(A) provides that:

"When error is predicated on the giving or refusing of any instruction, the instruction shall be set out verbatim in the argument section of the brief with the verbatim objections, if any, made thereto. Any error alleged in the motion to correct errors not treated as herein directed shall be deemed waived."

Appellant has thus twice failed to follow these requirements and therefore the alleged error is deemed waived.

As hereinbefore explained, the judgment of the trial court is reversed as to Count I, Violation of the 1935 Firearms Act, and affirmed as to Count II, Armed Robbery.

Givan, and Hunter, JJ., concur; Prentice, J., concurs in result; DeBruler, J., dissents with opinion.

### DISSENTING OPINION

DEBRULER, J.—The majority opinion sanctions the initial search of the paper sack seen on the floor of the car with the theory that it was a search incident to a lawful arrest and therefore is not violative of the Fourth Amendment under the United States Supreme Court decisions in *U.S.* v. *Robinson* (1973), 94 S. Ct. 467, and *Gustafson* v. *Fla.* (1973), 94 S. Ct. 488. I believe this view is a dangerous misinterpretation of *Robinson* and *Gustafson* and creates a precedent which erroneously and unwisely expands the authority of the police to search motorists on Indiana highways.

When Deputy Sheriff Fields first stopped this automobile he had no knowledge of the recent armed robbery at the Bosley's home. His only authority to stop the car at that time was for a misdemeanor violation of one of the sections of the Motor Vehicle Code which concerns the operation and maintenance of certain automotive equipment. When he saw part of a tire tool protruding from a paper sack lying on

the floor of the automobile he ordered the occupants out of the car, opened the sack and discovered a tire tool, pink rubber gloves and a hunting knife. All three of these exhibits, along with numerous others discovered after the shooting incident, were admitted at trial. Clearly the opening of the paper sack on the floor of the car constituted a search within the meaning of the Fourth Amendment. *Chambers* v. *Maroney* (1970), 399 U.S. 42, 90 S. Ct. 1974, 26 L. Ed. 2d 419; *Carroll* v. *U.S.* (1925), 267 U.S. 132, 45 S. Ct. 280. The majority today finds, however, that although Deputy Fields had no probable cause at the time of the search of the sack, it was nevertheless proper solely on the ground that the defendant and his companion had been "arrested" on the loud muffler charge and that the *Robinson* and *Gustafson* decisions allow a police officer to "thoroughly search the arrestee" in this situation as a search incident to a lawful arrest. This holding misinterprets those decisions in two significant ways. First, *Gustafson* and *Robinson* concern the permissible scope of a search of a person incident to a custodial arrest, but they do not authorize, as the majority holding would seem to imply, a search of those sections of a car which lie beyond the area of control of the arrestee. Secondly, neither decision concerns the type of "arrest" with which we are confronted here.

On those occasions when a police officer in Indiana stops a motorist for a minor traffic violation, as we have here, the officer is not empowered to automatically effect a full custodial arrest and haul the motorist off to the stationhouse. Both IC 1971, 9-4-1-130, being Burns § 47-2307 and IC 1971, 9-4-1-131, being Burns § 47-2308, require that the officer may only issue a summons to the offender and then must allow him to proceed on his way. It is only in the case of a serious traffic offense (Burns § 47-2307[2] to [5]), or in the event a motorist refuses to promise to appear in court at a future date (Burns § 47-2307[6]) that the police may effect a full arrest and take the motorist to the police station for booking. In a normal traffic misdemeanor situation a police officer may

only impose what may be termed a limited arrest for the purpose of issuing the summons and then must release the motorist from this limited form of custody.

Both the facts and language of *Gustafson* and *Robinson* specifically concern the type of traffic violations which requires or allows an officer to effect a full custodial arrest. It is apparent from the opinions that the sole basis for the full scale search of the motorist was the full custodial type of arrest being effected in both of those situations.

> "The justification or reason for the authority to search incident to a lawful arrest rests quite as much on the need to disarm the suspect *in order to take him into custody* as it does on the need to preserve evidence on his person for later use at trial.
>
> * * *
>
> "It is scarcely open to doubt that the danger to an officer is far greater in the case of the extended exposure which follows *the taking of a suspect into custody and transporting him to the police station* than in the case of the relatively fleeting contact resulting from the typical *Terry* type stop. This is an adequate basis for treating all custodial arrests alike for purposes of search justification." (Emphasis added.) *U.S.* v. *Robinson* (1973), 94 S. Ct. at 476.

In a footnote in *Robinson* the Court made a sharp distinction between the full custodial arrest with which it was concerned in that case, and what was characterized by the Court as a "routine traffic stop, i.e. where the officer would simply issue a notice of violation and allow the offender to proceed." Fn. 6 at 477. The majority specifically stated that they were not deciding the constitutionality of searches incident to these routine traffic stops. It is precisely that type of limited arrest resulting from a routine traffic stop which faces us here, and while the Fourth Amendment does not prevent a full search incident to a lawful custodial arrest I do not believe it to condone a full search incident to a routine traffic stop where the police officer is not authorized to take the motorist into custody. It is evident that the Supreme Court justifies the search of the arrestee on the grounds of the full custodial

nature of the arrest, but where, as here, there is no full custodial arrest the justification and rationale allowing the search is obviously absent.

The majority's present interpretation of the *Gustafson* and *Robinson* decisions, as allowing a full scale search of anyone who violates some traffic regulation, invites wholesale and groundless intrusions upon the personal privacy of thousands of Indiana motorists. Thus, under this interpretation the vast number of Indiana citizens who travel by automobile and who may be stopped for having a non-functioning license plate light (IC 1971, 9-8-6-6, being Burns § 47-2204), or for failure to dim their headlights for an on-coming car (IC 1971, 9-8-6-24, being Burns § 47-2220) or for driving on studded snow tires after the first of May (IC 1971, 9-8-6-39, being Burns § 47-2233), or for any of a multitude of minor traffic offenses, are subject, without further authorization or circumstances, to having the contents of their wallets, pockets and pants cuffs examined by the police.

I am not, of course, claiming that an officer can never conduct a search after a routine traffic stop. We have repeatedly recognized the essential concerns of a police officer for his own safety when he encounters any citizen in the performance of his duty, and where there exists special facts or circumstances which gives the officer reasonable grounds to believe that the occupants of a car are armed, he may conduct a protective frisk. *Terry* v. *Ohio* (1967), 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889; *Sayne* v. *State* (1972), 258 Ind. 97, 279 N.E.2d 196; *Paxton* v. *State* (1970), 255 Ind. 264, 263 N.E.2d 636. The majority opinion, however, does not attempt to base its holding on the *Terry* exception, but makes, what is in my opinion, the mistake of authorizing full scale searches based on the sole fact of a minor traffic violation.

Since I believe Deputy Fields was in violation of the strictures of the Fourth Amendment when he examined the paper

sack on the floor of the car and because I do not think the admission of the pink gloves into evidence was harmless error under the rules of *Chapman* v. *California* (1967), 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 and *Harrington* v. *California* (1969), 395 U.S. 250, 89 S. Ct. 1726, 23 L. Ed. 2d 284, I find I must dissent.

NOTE.—Reported at 312 N.E.2d 77.