JAMES JOHNSON *v.* STATE OF INDIANA.

[No. 2-1075A297. Filed May 26, 1977. Rehearing denied August 30, 1977.]

*George ·T. Popcheff,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, for appellee.

BUCHANAN, P.J.—Defendant-Appellant, James Johnson (Johnson), appeals from his conviction of Robbery,[1] claiming improper venire, juror misconduct, insufficiency of the evidence, and prejudicial comments by the trial judge regarding the operation of the "good time" statute.[2]

We affirm.

## FACTS

The facts most favorable to the State are:

In mid-morning, on March 12th, 1974, two unmasked men entered the Crown Finance Corporation office in Marion County. After inquiring about a loan, one of the men, Johnson, drew a .38 calibre handgun and ordered the assistant manager (Weaver) and a patron (Barnes) to lie on the floor.

Two women workers were then ordered to empty the cash from the cash drawer. The men removed files from a safe

1. IND. CODE § 35-13-4-6.
2. IND. CODE § 11-7-6.1-1.

and Barnes' and Weaver's wallets. After binding the two women, both men fled.

Some months later Weaver and Barnes were requested to come to the City-County building to identify a possible suspect to the crime. After arriving in court, and while seated in the gallery, they noticed Johnson walking in front of them. They simultaneously recognized him as the person who had held a gun on them during the robbery. They notified police who arrested Johnson.

During selection of the jury the bailiff and the trial judge added members to the venire by requesting people in and about the courtroom to join the panel from which the jury was to be selected.

After a jury had been selected, and before the jury had been sworn, the trial judge in his opening remarks expressed the need for the jury to be aware of the "good time" statute and went into some detail as to how it operated. After giving some examples of the effect of "good time" under the statute, he commented that this case might be a "test case." During the course of these remarks he also said:

> "Ladies and gentlemen, I'm simply going to explain to you that the law says that every man who is imprisoned is entitled to good time or to have his sentence cut down based upon a statutory scheme of giving the imprisoned person good time toward his sentence.
>
> "Now, I don't want you to concern yourselves with how much time he will actually do, because to a great extent that's up to the person who is sent to prison.
>
> ". . . and I don't want you to even consider that [the amount of time he might serve.] I simply want you to understand its existence [good time.] It's a possibility.
>
> "I just want you to be informed and intelligent when you are deliberating on your verdict."

During the deliberations one of the jury members left the jury room without permission, and the bailiff, when informed of the fact, said that "this was grounds for mistrial."

Although charged with Committing a Felony While Armed, to-wit: Robbery,[3] Johnson was convicted of Robbery.

## ISSUES

Johnson raises four issues for our consideration:
    (1) Was there sufficient evidence to sustain a conviction?
    (2) Did the trial court err by overruling Johnson's objection to the Judge's comments about the Good-Time Statute?
    (3) Was there juror misconduct?
    (4) Did the trial court err by personally securing the talesman?

Johnson first contends there was insufficient evidence to sustain the conviction. He argues there was an insufficient opportunity for the witnesses to identify him, and further there was no evidence of age.

He next asserts that the trial court discussion of the "good time" statute introduced an element the jury was not permitted to consider, and also tended to confuse and prejudice them in their deliberations.

Third, he argues that the verdict was tainted because one of the jurors left the jury room during the deliberations, and that there was confusion among some of the jurors.

Finally, Johnson contends that the trial judge tainted the talesman by personally securing the potential jurors from passersby and onlookers. Johnson asserts the judge has no authority to secure the jurors.

## DECISION

ISSUE ONE

CONCLUSION—There was sufficient evidence to sustain the conviction.

---

3. IND. CODE § 35-12-1-1.

The evidence was that both Barnes and Weaver had almost one full minute in a well-lighted office in the middle of the morning to observe Johnson. The view was not obstructed and Johnson was unmasked. Later, at trial, both men positively identified him as the man who had held the gun on them. So there is sufficient evidence as to identification.

Johnson also claims that the only evidence of age, an element of the offense, was illegally introduced without a sufficient waiver on his part, citing *Miranda* v. *Arizona* (1964), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

There was, however, sufficient evidence in the record to sustain a finding that Johnson was older than the required sixteen (16) years, ignoring the allegedly tainted evidence. The description of the defendant given to police, and admitted as Defendant's Exhibit, places his age at twenty-four (24). One of the witnesses testified that Johnson appeared to be in his middle twenties. *See Willoughby* v. *State* (1966), 247 Ind. 210, 214 N.E.2d 169.

Therefore the complained of testimony, even if tainted, was merely cumulative.

There was sufficient evidence to sustain the judgment.

ISSUE TWO

CONCLUSION—Discussion of the "good time" statute in the judge's opening remarks, although a violation of Indiana case law, does not require reversal under the circumstances of this case.

Johnson's basis for reversal of his conviction because of the trial judge's comments about the "good time" statute is *Deming* v. *State* (1956), 235 Ind. 282, 133 N.E.2d 51.

*Deming,* and also *Turner* v. *State* (1970), 254 Ind. 91, 257 N.E.2d 825, reverse convictions because a bailiff made improper comments to the jury. Specifically, in *Deming,* a juror asked the bailiff what were the probabilities that the defendant woud be paroled. The bailiff left the jury room and brought

back a message from the judge that it would be within the discretion of the institution in which the defendant was incarcerated. The Supreme Court reversed on the ground that any such communications must be made in open court in the presence of the defendant. It also cited with approval *Coward* v. *Commonwealth* (1935), 164 Va. 639, 641, 646, 178 S.E. 797, 798, 799-800, which held that while it is generally considered to be error to tell a jury its sentence may be modified by another branch of government, *that error is of little importance if the court itself fixes the penalty.*

So *Deming* does not require reversal because in the instant case the court fixed sentence.

More germane is *Turner,* in which a bailiff advised a juror that actual time served would depend on good behavior.

In no uncertain language the Court stated:

> The *matter of a defendant's parole or how long he would serve under good behavior is not for the jury's consideration.* We have held that it was improper for the State to mention in argument that if a defendant were only convicted of manslaughter he might be out of the prison in two years. The legislature has fixed the punishment for the crime. *The duty of the jury is only to consider the guilt or innocence of the accused. Rowe* v. *State* (1968), 250 Ind. 547, 237 N.E.2d 576. (Emphasis added) *Turner* v. *State, supra* at 93, 257 N.E.2d at 826. See also *Sparks* v. *State* (1972), 154 Ind. App. 691, 290 N.E.2d 793.

So by virtue of the holdings in *Turner and Rowe,* it was error for the trial judge to discuss the "good time" statute with the jury, an error which is not necessarily fatal. In *Turner* no attempt was made by the court to admonish the jury, and in *Rowe* the Supreme Court implied an admonishment could have cured the prejudicial effect of such remarks. In part at least the decision in *Rowe* was based on the intended prejudicial effect of the prosecutor's remarks.[4]

---

4. In the case at bar the remarks of the prosecutor were quite obviously intended to influence the jury's determination and finding of guilt of murder in the second degree as opposed to manslaughter. In a case such as this these remarks are clearly erroneous and prejudicial on their face. *Rowe* v. *State, supra* at 554, 237 N.E.2d at 580.

Here, the trial judge's comments were intended to inform, not prejudice, the jury.

He repeatedly said, "Now, I don't want you to concern yourself with how much time he will actually do, . . ." and ". . . I don't want you to even consider that [the effect of the good time statute]." "I just want you to be informed and intelligent. . . ."

So, although we conclude that the trial court violated a specific Supreme Court prohibition against discussion of the effects of parole and "good time," Johnson's conviction should not be reversed. Our conclusion is reached, however, within the narrow confines of this case.

ISSUE THREE

CONCLUSION—Failure of defense counsel to object to the jury panel waives only error in securing the venire.

Johnson objects to the selection of the venire contending the bailiff and finally the judge were forced to leave the court to "round up" enough people to impanel a jury, and therefore some members of the panel missed part of the voir dire examination. This issue is waived because no motion for mistrial or objection of record on the part of the defense counsel is evident in the record. Johnson passed the jury without objection—a fatal omission. *See Ohio & M. Ry. Co.* v. *Stein* (1899), 140 Ind. 61, 39 N.E. 246.

ISSUE FOUR

CONCLUSION—The jury verdict may not be impeached by these affidavits.

Johnson seeks to impeach the jury verdict based upon two affidavits, one submitted by a juror, and the second by Johnson's counsel, alleging juror and bailiff misconduct.

The juror's affidavit essentially states:

(a) The jurors were confused in their deliberations because they had arrived in the courtroom at various states of voir dire.

(b) One of the jurors left the jury room during the deliberations.

(c) The bailiff, when informed the juror had left the jury room, stated "this was grounds for mistrial."

(d) One of the jurors appeared to be mentally disabled.

The lawyer's affidavit merely stated that one of the jurors indicated to him some confusion as to the verdict for which he had voted.

It has long been the general rule in this state that the verdict of a jury may not be impeached by the testimony or affidavit of a juror. *Critchlow* v. *State* (1976), 264 Ind. 458, 346 N.E.2d 591; *Stinson* v. *State* (1974), 262 Ind. 189, 313 N.E.2d 699; *Turczi* v. *State* (1973), 261 Ind. 273, 301 N.E.2d 752; *Wilson* v. *State* (1970), 253 Ind. 585, 255 N.E.2d 817; *Krivanek* v. *State* (1969), 252 Ind. 277, 247 N.E.2d 505. The two affidavits before us contain the kinds of attacks on a verdict that are within the general rule.

*Laine* v. *State* (1972), 154 Ind. App. 81, 289 N.E.2d 141, cited by Johnson, is not applicable. In that case the bailiff entered the jury room and undertook the task of reading and explaining verdict forms to the jury.

Finding no reversible error, we affirm.

Sullivan, J. and Staton, J. (by designation), concur.

NOTE.—Reported at 362 N.E.2d 1185.