**CITY OF INDIANAPOLIS, Appellant (Defendant Below),**

v.

**Audrey ERVIN, Administratrix, Appellee (Plaintiff Below).**

**No. 2–678A203.**

Court of Appeals of Indiana, Second District.

May 29, 1980.

Rehearing Denied Aug. 27, 1980.

---

2. Repealed by Acts 1976, P.L. 148, § 24, effective Oct. 1, 1977. For saving clause, see Acts 1977, P.L. 340, § 150.

**58**

Sheila S. Suess, Corp. Counsel, William L. Soards, Soards & Carroll, Indianapolis, for appellant.

David W. Foley, Indianapolis, for appellee.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Defendant-appellant City of Indianapolis (City) appeals a $75,000 judgment in favor of Audrey Ervin, plaintiff-Administratrix of the Estate of Jewell Ervin (Ervin), who had been killed by Indianapolis police officers, the City claiming, inter alia, that the police officers only used reasonable and necessary force.

We affirm.

## FACTS

The facts most favorable to the judgment reveal that in Indianapolis on the night of September 6, 1973, police Officer Armor stopped a vehicle matching the description he had received of a vehicle involved in a hit-and-run and property damage collision. He learned that the driver was Gerald Akers from his identification and registration for the vehicle.

Officer Armor then proceeded alone to the accident scene. After conferring with the officer at the scene, they decided to go to the address furnished by Akers to order him to appear at the police Hit and Run Office for further investigation the next morning.

Upon arriving at the residence the officers observed Akers' car in the driveway. They then knocked at the front door, and Mrs. Allen, Akers' mother-in-law, answered the knock. Subsequently Akers appeared, and in response to their request he consented to their further inspection of his vehicle. Because Mrs. Allen began to argue with the officers, Akers said he would go to the police station and settle it that night. Armor placed him in his police vehicle, then called a wrecker to tow in the car as evidence. At this time Sergeant Kryter was called to supervise.

Jewell Ervin, the deceased and a friend of Mrs. Allen's, came from the house and began a disturbance by yelling at the officers, calling them names, challenging them to fight, and throwing a brick or piece of cement at the wrecker. The officers called for assistance, which prompted Ervin, who was then standing on the front porch of the house, to shout that he was going to get his shotgun. The two officers then drew their pistols and entered the house. Ervin was ordered out of the house and told he was under arrest. He suddenly appeared at a bedroom doorway, grabbed Officer Armor, fought for the officer's gun, and succeeded in knocking him to the ground. Ervin then grabbed Kryter's night stick and began to swing it around hitting the officers. The officers finally subdued him and tried to apply handcuffs but upon hearing a disturbance at the front of the house Ervin resumed the fight. Ervin hit Officer Kryter with a night stick knocking him unconscious, saying that he would kill him. At that moment Officer Bastin, seeing a fellow officer in extremis, arrived to assist him. Ervin struck him with a night stick causing him to recoil. In response, Officer Bastin

fired a shot hitting Ervin above his left hip. An ambulance was called, but Ervin subsequently died from the gun shot wound.

Audrey Ervin, widow of the deceased, brought suit against the City of Indianapolis alleging that the death was wrongful and the result of unreasonable force by the police officers and that the City was negligent in employing and training the officers. Mrs. Ervin prayed for damages in the amount of $500,000.00. Judgment was entered on the jury's verdict for the plaintiff in the amount of $75,000.00. The City brings this appeal.

## ISSUES

The City presents eight issues for our review:

 I. Is the verdict contrary to the evidence and not supported by sufficient evidence upon all necessary elements of Ervin's claim?

 II. Was it error to deny the City's Motion For Judgment On The Evidence?

 III. Did the court abuse its discretion in denying the City's Motion for a Continuance?

 IV. Was it proper to refuse to admit into evidence the City's Exhibit B, a manual captioned "Accident Investigations, Hit and Run?"

 V. Did the court err in presenting instruction number 8(A) to the jury?

 VI. Did the court err in presenting instruction number 13 to the jury?

 VII. Was it error for the court to refuse to grant a new trial after permitting communication with the jury outside the presence of counsel and the parties?

 VIII. Were the damages awarded excessive?

1. The City also argues that Ervin failed to prove the two elements of her complaint: that the City itself was negligent in employing incompetent police officers and in failing to properly train the police officers in the use of fire-

## ISSUES I AND II.

Issues I and II may be combined:

 I. Is the verdict contrary to the evidence, and not supported by sufficient evidence upon all necessary elements of Ervin's claim?

 II. Was it error to deny the City's Motion For Judgment On The Evidence?

■ *CONTENTIONS*—The City contends that the uncontradicted evidence clearly showed that the actions of the officers in entering the property, in arresting Akers, and in towing the automobile from the driveway were not unlawful; that Ervin became disorderly; and that therefore the City was not negligent.[1]

Ervin argues that the City had the burden of proving that the killing was the result of reasonable force, and since the jury found in a general verdict against the City, it is appealing a negative judgment, and therefore it cannot argue that the verdict is not supported by sufficient evidence. Ervin also argues that under the theory of her case she had only to prove that (1) the death was caused by the officer, (2) the officer was acting within the scope of his employment, and (3) damages.

*CONCLUSION*—There was sufficient evidence to support the judgment that a police officer employed by the City used unreasonable force in killing Jewell Ervin.

■ Ervin fails to favor us with any authority to support her position that it was the City's responsibility to prove that the force used by the policeman was reasonable. On the contrary, Ervin had the burden to prove the claim made in her complaint that "the killing resulted from the use of unreasonable force by the police officers." *Manson v. Wabash Railroad Co.* (1960 Mo.), 338 S.W.2d 54; *State v. Pugh* (1888), 101 N.C. 737, 7 S.E. 757; *Bursack v. Davis* (1929), 199 Wis. 115, 225 N.W. 738; *Wirsing v. Krzeminski* (1973), 61 Wis.2d 513, 213 N.W.2d 37.

arms. Claims of error presented for the first time in appellant's brief are not properly before this court. *Slinkard v. Extruded Alloys* (1971), 150 Ind.App. 479, 277 N.E.2d 176.

In fact, Ervin had the burden to overcome a presumption that the police officer acted in good faith. *State v. Pugh, supra.*

■ It is also true that the City can be found liable for damages for personal injury if a relationship of principal and agent or master and servant is found to exist between the municipality and the officer, *Brinkman v. City of Indianapolis* (1967), 141 Ind.App. 662, 231 N.E.2d 169; *Klepinger v. Board of Commissioners of County of Miami* (1968), 143 Ind.App. 155, 239 N.E.2d 160 (overruled on other grounds, *Campbell v. State* (1971), Ind.App., 269 N.E.2d 765); and if the actions of the policeman can be found to breach a duty which was owed to a private individual. *Simpson's Food Fair, Inc. v. Evansville* (1971), 149 Ind.App. 387, 272 N.E.2d 871; *Miller v. Griesel* (1973), 261 Ind. 604, 308 N.E.2d 701.[2] In such cases the negligence of the officer is imputed to the municipal corporation under the doctrine of respondeat superior.

The evidence most favorable to the verdict indicates Officer Bastin was employed by the City of Indianapolis, and that when in response to a call for assistance, he arrived at the residence where Aker was staying, he was acting within the scope of his employment. This evidence was sufficient to sustain a finding that the City is liable if the negligence of the officer has been proved.

■ A policeman has a responsibility when subduing an arrestee not to use more force than is reasonably necessary under the circumstances surrounding its use. *Lentine v. McAvoy* (1927), 105 Conn. 528, 136 A. 76; 5 Am.Jur.2d *Arrest* § 81 (1962); *see also State v. Mulvihill* (1970), 57 N.J. 151, 270 A.2d 277; *People v. Curtis* (1969), 70 Cal.2d 347, 74 Cal.Rptr. 713, 450 P.2d 33; *Towle v. Matheus* (1900), 130 Cal. 574, 62 P. 1064; *Gross v. State* (1917), 186 Ind. 581, 117 N.E. 562; *Meriwether v. Walford* (1894), 11 Ind.App. 392, 39 N.E. 162; Annot. 60 A.L.R.2d 873 (liability of arresting officer for damages for the negligent infliction of personal injuries). The question whether the force used was excessive under the cir-

cumstances is a question for the trier of fact.

■ At the time of the shooting resulting in Jewell Ervin's death there were six policemen attempting to subdue the occupants of the house. Jewell Ervin was twenty-three years old, a husky man five feet nine inches tall weighing 162–170 pounds. He swung his arms and hit the officers with one of the officer's night stick while he shouted threats at them. When Officer Bastin arrived in response to a call for assistance he saw Ervin strike Officer Kryter knocking him unconscious. When Bastin tried to grab Ervin, he wheeled around and struck Bastin on the side of the face and neck with the night stick, causing Bastin to fall backwards on one knee. While Ervin was still swinging the night stick at Bastin, he drew his gun and, as Ervin stood over him, shot Ervin above the left hip.

The evidence describing the struggle between Ervin and the officers was not without conflict. And construing the evidence most favorable to Ervin, as we are bound to do, there is evidence supporting a finding that Officer Bastin used more force than was reasonably necessary under the circumstances. Whether we agree with the jury's verdict or not, as an appellate court we can not conclude as a matter of law that the judgment should be reversed. Differently stated, reasonable men could differ on the conflicting evidence presented. Thus, it was not error for the trial court to deny the City's Motion For Judgment On The Evidence.

### III.

*ISSUE*—Did the court abuse its discretion in denying the City's Motion For A Continuance?

*CONTENTIONS*—The City contends that because the only attorney familiar with the case had been selected to serve as chief counsel to the House of Representatives and would be unavailable to try the case on the date set, the trial court abused its discretion in denying its motion.

---

**2.** *See* Annot. 76 A.L.R.3d 1176 (concerning liability of a municipal corporation for injuries to bystanders by a policeman).

Ervin argues that the motion was insufficient in that it failed to show good cause for the continuance.

*CONCLUSION*—We find no abuse of discretion in denying the Motion For A Continuance.

■ The trial date of January 17, 1978, was set during the previous August. The motion for continuance was filed on December 21, 1977, twenty-seven days before the trial date.

Trial courts are governed by Indiana Rules of Procedure, Trial Rule 53.4 in ruling on a motion for continuance:

> Upon motion, trial may be postponed or continued in the discretion of the court, and shall be allowed upon agreement of all the parties *or upon a showing of good cause* established by affidavit or other evidence . . . . .

"The latitude necessary for granting continuances has been rightfully placed in the hands of the trial judge. This court will only reverse for a clear and blatant abuse of that discretion." *Loudermilk v. Feld Truck Leasing Company of Indiana* (1976), Ind.App., 358 N.E.2d 160, 165–66. The trial court is not required to grant the motion simply because it complied with Trial Rule 53.4. *Keys v. State* (1979), Ind., 390 N.E.2d 148; *Phillips v. State* (1979), Ind.App., 386 N.E.2d 704.

■ In order to demonstrate an abuse of discretion by the trial court, the movant must show harm resulting from denial of the motion. *Flick v. Simpson* (1969), 145 Ind.App. 698, 252 N.E.2d 508, 255 N.E.2d 118; *Johnson v. State* (1979), Ind.App., 384 N.E.2d 1035; *Butler v. State* (1978), Ind. App., 372 N.E.2d 190.

The City's affidavit does not indicate an inability to secure adequate counsel to try the case. The affidavit does not say that the trial preparation had not begun; in fact, it inferred substantial work had been completed. It did not state that another attorney would be unable to complete preparation of the case for trial. It did not say there was no other attorney available to try the case for the City on the trial date.

The record shows that Attorney Darst, who represented the City at trial, was not unfamiliar with the case; he had almost four weeks to familiarize himself with the case.

Under these circumstances the City has hardly demonstrated such harm or prejudice as to constitute abuse of discretion.

IV.

*ISSUE*—Was it proper to refuse to admit into evidence the City's Exhibit B, a manual captioned Accident Investigations, Hit and Run?

*CONTENTIONS*—The City contends that the excluded evidence was important to show the lawful actions of the officers in arresting Akers for the hit and run, and to show that the officers were pursuing the investigation and arrest in a reasonable manner. The City also argues that it was harmed because the exclusion of the manual gave the jury the impression that the court did not believe the investigating instructions in the booklet were correct.

Ervin contends that the City was not harmed because the contents of the manual were admitted through an officer's oral testimony.

*CONCLUSION*—The trial court did not err in excluding the evidence, and the City was not prejudiced by the exclusion.

■ It is true that any evidence tending to prove a material fact is admissible even though its tendency in that direction is slight. *Bertram v. State* (1978), Ind., 375 N.E.2d 1098.

■ However, the contents of the manual on the proper procedure to be followed in pursuing a hit-and-run investigation are not material to the ultimate finding of liability of the City for the allegedly negligent act of Officer Bastin in shooting Ervin. (See Issues I and II.) As we state in our discussion of Issues III and IV, whether or not other officers were properly pursuing a hit and run investigation is irrelevant as to whether Ervin had a right to resist Officer Bastin's attempt to put him under arrest

(Ervin had no such right), or whether the officer used reasonable force in subduing Ervin when he used his gun to shoot him. Omission of evidence not relating to a material fact is not grounds for error.

 Even if the evidence were admissible, it is the responsibility of the offering party to show that the erroneous ruling was prejudicial, before it may be grounds for reversal. 2 I.L.E. *Appeals* § 617 (1957). The City was hardly prejudiced because significant parts of the manual were entered into evidence during the testimony of Officer Bickel, and the principal statute interpreted in the manual was later given to the jury by the court in an instruction.

## V.

*ISSUE*—Did the court err in presenting instruction number 8(A) to the jury?

*CONTENTIONS*—The City contends that the instruction, which stated that a police officer cannot enter on private property without a search warrant and without probable cause is not the law.

The City also argues that it was error for the court to instruct the jury concerning a situation in which probable cause was not present because the uncontradicted evidence established that probable cause was present.

Ervin answers that the City merely objected to the instruction "for the reason that it really does not state a principle of law and because of that it is confusing."

 *CONCLUSION*—The City has waived any error in the giving of this instruction by failure to make proper objection and to offer a more accurate instruction to replace it.

Ervin's instruction number 8(A) given by the court reads as follows:

**3.** The City argues that probable cause existed for the officers to search for further evidence of the hit and run offense, citing Ind.Code 9–4–1–134. However, although that statute grants police officers authority to arrest persons for certain misdemeanors committed out of their presence without a warrant when probable cause exists, it in no way authorizes a search or seizure of property or evidence without a

A police officer may not enter upon private property without a search warrant, and *without probable cause*, to conduct a search for evidence of probable cause.

Ind. Rules of Procedure, Trial Rule 51(C) provides in part: "[n]o party may claim as error the giving of an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." The City's objection that the instruction does not state a correct principle of law or that it is confusing or misleading does not present sufficient grounds for action by the trial court and preserves nothing for review. *United Farm Bureau Family Life Insurance Co. v. Fultz* (1978), Ind.App., 375 N.E.2d 601; *Bullock v. State* (1978), Ind.App., 382 N.E.2d 179.

 It has also been frequently held that an appellant waives error in a giving of an instruction when he fails to object to such instruction on the same theory advanced on appeal. *Brook v. St. John's Hickey Memorial Hospital* (1978), Ind., 380 N.E.2d 72; *Bullock v. State, supra.* Whether there was evidence of a lack of probable cause[3] was not raised in the objection before the trial court.

The City's own instruction number 11(A), which was given, stated the general principle conveyed in *Giacona v. United States* (5th Cir. 1958), 257 F.2d 450, *cert. den.* 358 U.S. 873, 79 S.Ct. 113, 3 L.Ed.2d 104:

When the performance of his duty requires an officer of the law to enter upon private property, his conduct, otherwise a trespass, is justifiable.

 While this principle deals with whether an entry onto property constitutes a trespass, it does not provide justification for all other acts of an officer while on the

search warrant and merely upon probable cause. The law is to the contrary, no amount of probable cause can justify a warrantless search or seizure without exigent circumstances. *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564. *See also Payton v. New York*, —— U.S. ——, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).

property. *Foster v. United States* (5th Cir. 1961) 296 F.2d 65; *see May v. State* (1977), Ind.App., 364 N.E.2d 172, *cert. den.* 435 U.S. 1000, 98 S.Ct. 1657, 56 L.Ed.2d 91.

██ Another instruction did explain search and seizure under exigent circumstances. The above instructions when read together provided the jury with an adequate and correct description of the right of an officer to be on private property and to make a search and seizure under exigent circumstances. Thus, the City has not demonstrated error in either of the above instructions.

## VI.

*ISSUE*—Did the court err in presenting Instruction number 13 to the jury?

*CONTENTIONS*—The City contends that Instruction number 13 was inconsistent with Ervin's Instruction number 11; that there was no unlawful police activity upon which to base the instruction; and that the instruction without further qualification is an incorrect statement of the law.

Ervin responds that the errors, if any, have been waived by the City's failure to properly preserve them for review.

*CONCLUSION*—The City has not properly preserved its allegation of error concerning this instruction.

Ervin's Instruction number 13, which was given to the jury, reads as follows:

In Indiana, a person has a right to resist an unlawful arrest.

██ Because the City did not raise as error before the trial court the inconsistency of instructions 13 and 11, this error may not be reviewed on appeal.

██ As to the City's second and third objections, the law in Indiana was found by this court in *Fields v. State* (1978), Ind.App., 382 N.E.2d 972, which followed *Heichelbech v. State* (1972), 258 Ind. 334, 281 N.E.2d 102. A citizen may not resist arrest by a police officer performing his duty whether the officers' actions later turned out to be lawful or unlawful. The instruction given was erroneous. However,

the City did not make this specific objection at trial. It objected on the grounds that a citizen may resist arrest only under certain very specific conditions, which were not present, relying on Justice Prentice's dissenting opinion in *Whited v. State* (1971), 256 Ind. 386, 269 N.E.2d 149.

██ In any event, an instruction correctly stating the law was properly presented to the jury by the City's Instruction number 11:

In the absence of excessive or unnecessary force by an arresting officer, a private citizen may not use force to resist arrest by one he knows, or has good reason to believe, is an authorized police officer engaged in the performance of his duties whether or not the arrest is illegal under the circumstances.

The City simply failed to properly raise a valid and cogent objection to Instruction number 13 before its submission to the jury and therefore waived any allegation of error on appeal.

## VII.

*ISSUE*—Was it error for the court to refuse to grant a new trial after permitting communication with the jury outside the presence of counsel and the parties?

*CONTENTIONS*—The City contends that certain communications by the bailiff with the jury related to material issues and thus constituted reversible error under *Conrad v. Tomlinson* (1972), 258 Ind. 115, 279 N.E.2d 546.

Ervin argues that the information conveyed by the bailiff was adequately explained and caused no prejudice to the defendant.

*CONCLUSION*—The City has made no showing of harm or prejudice as to the communications between the bailiff and the jury.

An affidavit by the City's counsel was attached to the City's motion to correct errors and reads as follows:

AFFIDAVIT

I, Richard L. Darst, being duly sworn upon oath state as follows:

1. I was the Assistant Corporation Counsel who represented the City of Indianapolis in the case of Ervin v. City of Indianapolis, S773–1351.

2. That the bailiff of the court informed me that the jury during its deliberations asked the court two questions, which were answered without counsel and the parties being present or consulted.

3. The bailiff reported that one question was about the income of the plaintiff and that the court told her to tell the jury that it must make its determination on the facts presented in the trial. The bailiff also reported that another question was whether or not the verdict had to be unanimous, and that she told the jury yes.

4. The questions and answers were not in writing, so exactly what was said in the questions or answers is not known.

5. One of the jurors also told me that in response to an inquiry from the jury that the bailiff told the jury that the jury could not stipulate what the plaintiff should use the money for. The parties and counsel were not consulted about this exchange either.

s/s Richard L. Darst
Richard L. Darst

Subscribed and sworn to before me, a Notary Public, in and for said State, this 17 day of March, 1978.

s/s Martha Ann Leonard
Notary Public

My Commission Expires:

March 17, 1980

I am a resident of Marion County.

**4.** Trial Rule 11(C) reads in part as follows: "Pleadings, motions and affidavits accompanying or in support of such pleadings or motions when required to be verified or under oath shall be accepted as a representation that the signer had personal knowledge thereof or reasonable cause to believe the existence of the facts or matters stated or

 Affidavits filed by trial counsel with a motion to correct errors, and based upon facts learned subsequently to their occurrence at trial, and from some source other than personal knowledge, have been found to be insufficient under Indiana Rules of Procedure, Trial Rule 11(C)[4] to properly preserve any error. *Grigsby v. State* (1978), 267 Ind. 465, 371 N.E.2d 384; *Johnson v. State* (1977), Ind.App., 362 N.E.2d 1185; *Merry v. State* (1975), 166 Ind.App. 199, 335 N.E.2d 249; *and see Sparks v. State* (1972), 154 Ind.App. 691, 290 N.E.2d 793 (attorney's affidavit was based on personal knowledge). The affidavit before us is not based on personal knowledge and is probably not sufficient.

But even if it were sufficient, a juror's testimony may not be used to impeach a verdict. *Grigsby v. State, supra*; *Henry v. State* (1978), Ind., 379 N.E.2d 132; *Wilson v. State* (1970), 253 Ind. 585, 255 N.E.2d 817; *Hardiman v. State* (1978), Ind.App., 377 N.E.2d 1384.

 The rule established in *Conrad* is that when an irregularity in a jurors' deliberations occurs harm will be presumed until an explanation for the alleged misconduct is offered. Then, as Justice Hunter said speaking for the majority, "if this court is satisfied that no harm or prejudice resulted, then the judgment will not be disturbed."

Although the conversations were not set out verbatim, the communications were sufficiently described.

 The responses of the trial court (that the jury must make its deliberations on the facts presented at trial) and of the bailiff (that the verdict must be unanimous) bring this case in line with *Conrad, supra*; *Gann v. State* (1975), 263 Ind. 297, 330 N.E.2d 88; *Frasier v. State* (1974), 262 Ind. 59, 312 N.E.2d 77, *cert. den.* 419 U.S. 1092, 95 S.Ct. 686, 42 L.Ed.2d 686; and *Fruehauf*

alleged therein; and, if otherwise competent or acceptable as evidence, may be admitted as evidence of the facts or matters stated or alleged therein when it is so provided in these rules, by the statute or other law, or to the extent the writing or signature expressly purports to be made on the signer's personal knowledge.

*Trailer Division v. Thornton* (1977), Ind. App., 366 N.E.2d 21. The rule of these cases is that if the communications do not involve any material issue of the case nor play a role in a decision on the merits of the verdict, no prejudice is shown and so it was in this case . . . no prejudice demonstrated.

### VIII.

*ISSUE*—Were the damages awarded excessive?

*CONTENTIONS*—Finally, the City contends that the verdict of $75,000 was excessive and lacked an evidentiary basis.

Ervin responds that the award was supported by the evidence.

*CONCLUSION*—There is sufficient evidence to support the amount of the verdict. It was not excessive.

■ Perusal of the evidence favorable to the verdict indicates that: at the time he died Jewell Ervin was 23 years of age; he was in good health; he had a life expectancy of 43.13 years; his income was approximately $9,000 that year; and his 30-year-old widow was dependent upon him for support of herself and her son.

As said many times before in order to reverse the damages they

"must be so excessive as to strike mankind, at first blush, as being beyond all measure, unreasonable and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice, or corruption. In short, the damages must be flagrantly outrageous and extravagant, or the court cannot undertake to draw the line, for they have not standards by which to ascertain the excess."

*Bonek v. Plain* (1972), 153 Ind.App. 516, 520, 288 N.E.2d 185, 188 (quoting *Coleman v. Southwick* (1812), 9 Johns 45, 6 Am.Dec. 253, 254); *Jones v. Cary* (1941), 219 Ind. 268, 37 N.E.2d 944.

Considering the evidence presented to the jury, the amount of damages does not appear so outrageous or extravagant as to indicate that the jury was motivated solely by sympathy, passion or prejudice. The award is adequately supported by the evidence.

The judgment of the trial court is hereby affirmed.

STATON, J. (sitting by designation), concurs.

SULLIVAN, J., concurs in result.