**Mike L. ELLSWORTH and Maxine J. Ellsworth, Defendants-Appellants,**

v.

**HOMEMAKERS FINANCE SERVICE, INC., Plaintiff-Appellee.**

No. 1–480A102.

Court of Appeals of Indiana, First District.

July 27, 1982.

Arthur H. Northrup, Indianapolis, Melvin R. Lind, Lind, Deckard & O'Brien, Danville, for defendants-appellants.

Richard M. Malad, William T. Rosenbaum, Dillon, Hardamon & Cohen, Indianapolis, Russell M. Webb, Jr., Palmer, Hinkle, Keck & Webb, Danville, for plaintiff-appellee.

NEAL, Judge.

## ON PETITION FOR REHEARING

Both appellants Ellsworths and appellee Homemakers have filed petitions for rehearing. Examination of Ellsworths' petition discloses a reassertion of the same arguments disposed of in the original opinion, and we therefore deny their petition for rehearing without opinion. However, Homemakers' petition raises serious and vexing problems consisting of new matter not raised or presented at trial, or on appeal. Ordinarily, the office of a petition for rehearing is to point out errors the court made in the original hearing. Normally, a question cannot be presented for the first time on a petition for rehearing, nor can a wholly different theory be advanced. *Cunningham v. Hiles*, (1980) Ind.App., 402 N.E.2d 17 (pet. reh.); 2 I.L.E. *Appeals* § 446.

In our published opinion, *Ellsworth v. Homemakers Finance Service, Inc.*, (1981) Ind.App., 424 N.E.2d 166, we affirmed the decision of the trial court granting the right of Homemakers to foreclose the mortgage, but modified the judgment by ordering a Sheriff's sale according to the mortgage foreclosure statutes, instead of allowing Homemakers to sell the property. Now, the petition for rehearing informs us that "since the appellants did not raise as an issue in this cause the trial court's order that Homemakers sell the real estate, applying the proceeds toward the judgment, and since no supersedeas bond or order of stay was requested or granted, Homemakers, on or about December 1, 1980, sold the property at private sale, as discussed in the affidavit of Richard M. Malad [one of Homemakers' attorneys] incorporated herein."

The affidavit recites that Ellsworths' deed dated October 29, 1976, was recorded by Homemakers on November 28, 1977, and upon receiving the court's order of November 19, 1979, it listed the property for sale. That on December 1, 1980, Homemakers sold the real estate, and the deed was delivered on March 9, 1981. Homemakers asserts that the price was "very favorable" and "in all probability [Ellsworths] benefitted more from this private sale than [they] would have from a sheriff's sale." Homemakers asserts that the requirement of a Sheriff's sale was impractical and unfair because:

(A) The trial court's finding that the real estate had been previously conveyed by deed to the Appellee was unchallenged by the Appellants, and thus it may be presumed that the private sale of the real estate was conducted by agreement of the parties.

(B) The Appellants failed to request or obtain an Order of Stay from this Court or from the trial court, thus Homemakers had a duty under the existing court order to sell the property in a commercially reasonable manner in order to mitigate the deficiency judgment owed by the Appellants. It would have been commercially unreasonable for the Appellee to allow the property to be abandoned until the date of this Court's order, August 11, 1981.

(C) The purchaser of the premises at issue herein *is a bona fide purchaser for value*. The purchaser could identify a direct chain of fee title by deed from the Appellants and had no reason to suspect that the sale would be invalidated. (Emphasis added.)

On oral argument, counsel for Homemakers, upon suggestion by Ellsworths' counsel, admitted that the purchaser of the property at private sale was one Mr. Whited, who appears from other portions of the record to be the Branch Manager of Homemakers, and who was directly involved in the events which were the subject of this litigation. Counsel further informed this court that no report of that sale had been made to the trial court, nor had any disclosure been made of the terms of that sale. Counsel

has conceded the correctness of this court's decision, including the requirement that in a real estate mortgage foreclosure the sale must be judicially supervised and sold by the sheriff according to the statutes, and that sales in a "commercially reasonable manner" are limited to chattels under the Uniform Commercial Code (U.C.C.) Homemakers further conceded as an abstract proposition of law, that the sale of mortgaged property according to the statutes is a precondition to the enforcement of a deficiency judgment. Homemakers' contention is that when the trial court authorized it to sell the real estate, it may have been an erroneous judgment, but such error was not raised as an issue in the motion to correct errors, or appeal, and thus, was waived. We disagree.

A review of the proceedings discloses that after the receipt of the deed, dated October 29, 1976, Homemakers, on April 4, 1977, commenced this action upon the note to foreclose the mortgage. Ellsworths' first theory of defense was that the transfer of the deed was payment in full, which defense was denied him upon the first appeal. 380 N.E.2d 1285. Upon remand, Ellsworths argued that they were entitled to a credit against the judgment on the note in an amount equal to the value of the property on October 29, 1976, to be determined by evidence at the trial. The transcript reflects that at the trial, Homemakers argued it was entitled to a personal judgment and had the right to sell the property and apply the proceeds to the satisfaction of the judgment. At that argument, Homemakers treated the sale of real estate as if the security were an automobile, and claimed it had a right to sell the real estate in a commercially reasonable manner. The trial court ordered the parties to submit entries, and it adopted the proposal prepared by counsel for Homemakers which contained the deficient order quoted in the opinion.

Ellsworths' motion to correct errors was filed on January 8, 1980, and, restated, complained of the following errors:

1. Recovery was excessive because the property was deeded on October 24, 1976, and the value had not been deducted from the balance then due for which the court rendered judgment.

2. The court had no authority (in a suit by plaintiff to foreclose a mortgage or real estate) to order the sale of real estate after determining that title had already passed to plaintiff before suit was filed, thus merging and extinguishing the mortgage.

3. The trial court erred in not permitting Ellsworths to prove value on October 29, 1976, and erred in not crediting that value against the judgment.

On appeal, Ellsworths' brief contained the following stated issues:

I. Did the trial court commit error in ordering a *Sheriff's* sale in an action instituted to foreclose a mortgage of real estate on which the Plaintiff (mortgagee) held title before the commencement of the action?

II. Does a deed of real estate from the debtor (mortgagor) to the creditor (mortgagee) given and accepted in lieu of cash payment constitute a payment in kind which must be deducted from the mortgaged balance in the amount of the real estate's value on the date conveyed?

III. Is it error to allow judgment against a debtor without granting a request for an opportunity to try the issue of the value of a payment in kind? (Emphasis added.)

In the summary of argument, Homemakers state, at page iv of their brief:

"The judgment of the trial court grants the mortgagors credit against the unpaid balance of the note for the net proceeds from the sale of real estate. This is the typical manner of crediting proceeds from the sale of real estate in a mortgage foreclosure proceeding. The Appellants seek credit against the unpaid balance of the note for the appraised value of the real estate as of the date of tender of the deed... The mortgagee lent a sum of money to the mortgagor in exchange for a note. The mortgage agreement served

only to secure the note. The mortgagee is entitled to full reimbursement for the amount borrowed including interest at the stated amount. The judgment of the trial court provides to the mortgagee precisely the relief to which it is entitled."

At pages 2 and 3 of the brief, Homemakers further argue:

" 'Ordinarily in the absence of prior charges or liens, the owner of a mortgage is entitled to receive out of the proceeds of the foreclosure sale an amount which will fully satisfy the debt, interest and costs. . . .' 20 I.L.E. *Mortgages*, § 391 at p. 270 (1959). If the mortgagor receives credit against the unpaid balance of the note for the appraised value of the property at the date of transfer, as is requested by the Appellants, the mortgagee will be unable to recover 'an amount which will fully satisfy the debt, interest and costs.' The mortgagor will be given credit for the gross value of the property while the mortgagee will only receive some lesser amount, the net proceeds of sale. This remedy does not permit the innocent mortgagee to become whole."

Homemakers, in their brief, at pages 4 and 5, further argued:

"Since the mortgagors admitted default upon the note and tendered a deed for the property to the mortgagee, actual mortgage foreclosure and sheriff's sale was unnecessary. The mortgagee was imposed with an obligation to sell the real estate in a *commercially reasonable manner* and apply the net proceeds to the unpaid balance of the note. . . .

A commercially reasonable sale by the mortgagee will most likely result in a higher sales price than would a sheriff's sale. In addition, the mortgagee can provide the purchasers with a Warranty Deed, while upon sheriff's sale, the purchasers could only obtain a right to a deed upon the expiration of the redemption period. This would surely increase the property's value to a purchaser." (Emphasis added.)

Ellsworth countered in the reply brief that only a judicially supervised mortgage foreclosure sale is recognized under the Indiana statutes for mortgage foreclosure.

From the lengthy recitation of the issues and arguments made thereto it is manifest that this litigation had one issue, that is, the manner of determining the deficiency judgment, if any. Both parties seemed unwilling, or unable, to follow the well-worn and well-marked path of mortgage foreclosure. On their part, Ellsworths attempted to make a conveyance to Homemakers of the mortgaged property with the hope of being acquitted of any deficiency whatever, but upon failing, they advanced a theory that the deficiency could be determined by an appraisement on the date of transfer. In its turn, Homemakers pursued an untenable theory that the real estate, like a chattel under the U.C.C., could be sold at private sale in "a commercially reasonable manner" without complying with the mortgage foreclosure statutes.

While filing a mortgage foreclosure suit and arguing foreclosure, Homemakers has dealt with the property received under the deed as its own, selling it to one of its principal officers in derogation of the mortgage foreclosure statutes. It is to be noted that while the sale was made on December 1, 1980, and their brief to the court bears a date of December 23, 1980, the brief makes no mention of the sale and speaks of their right to sell in a prospective manner. We further note that no effort was made by Homemakers to inform this court of the sale prior to our decision on August 11, 1981, and Homemakers did not inform us of the identity of the purchaser until oral argument.

In our opinion, this court refused to accept either the argument of Ellsworths or the argument of Homemakers, and we ordered the property sold by a judicially supervised Sheriff's sale. While not challenging the correctness of that decision, Homemakers contend that the question of the erroneous order in the manner of sale was not before the court, and Ellsworths had waived it. We wish to point out that the order did not specify the manner of sale. The sale was challenged both in the motion

to correct errors and the assignment of errors on appeal. As stated before, the ultimate issue here was the correct manner of determining the deficiency judgment, which, by its nature, involves a sale in one way or another. Further, the parties, as shown above, argued the merits of private sale, sheriff's sale, and determining deficiency by appraisement.

It is true that our Supreme Court has not favored the deciding of a case upon issues raised for the first time on appeal. "It is always a dangerous and hazardous matter for any court to attempt to determine an issue without the help of counsel in the cause and without giving the parties an opportunity to present their respective viewpoints. Such procedures should be avoided if possible." *J. I. Case Company v. Sandefur*, (1964) 245 Ind. 213, 197 N.E.2d 519. *See also Morgan County REMC v. Public Service Company of Indiana*, (1970) 253 Ind. 541, 255 N.E.2d 822. In identifying the questions presented for review on appeal, the rules of procedure must be construed to the end that only questions which are ruled upon by the trial court, and presented to the reviewing court in the same way will be reviewable. *Glass v. Continental Assurance Company*, (1981) Ind. App., 415 N.E.2d 126; *City of Indianapolis v. Ervin*, (1980) Ind.App., 405 N.E.2d 55; 2 I.L.E. *Appeals* § 466. The rule is not, however, conclusive. In *L. S. Ayres & Company v. Hicks*, (1942) 220 Ind. 86, 40 N.E.2d 334, pet. reh. 220 Ind. 86, 99, 41 N.E.2d 195, our Supreme Court by Chief Justice Shake stated:

"While alleged errors not presented and discussed in the appellant's brief will be treated as waived, this court does not regard itself as required to accept or reject the specific reasons advanced by a litigant to sustain his contentions. *Keeshin Motor Express Co. v. Glassman* (1942), 219 Ind. 538, 38 N.E.2d 847. The practice rule to the effect that alleged errors, not specifically pointed out in the appellant's brief, will be treated as waived was not intended to circumscribe the reviewing tribunal. The purpose of

the rule is to relieve the court of the burden of searching the record and briefing the case and to place that responsibility on the party asserting error. It will not be carried so far as to require the court to close its eyes to that which is apparent. To do so would not infrequently place us in the unhappy situation of lending tacit approval to an instruction palpably bad on its face, and this could only result in confusing the law and misleading the profession. In *Big Creek Stone Co. et al. v. Seward et al.* (1895), 144 Ind. 205, 210, 42 N.E. 464, 43 N.E. 5, it was observed in this connection that 'If the court were limited to the arguments and reasonings of counsel in its decisions of cases, to the exclusion of its own observations, many cases would lead us far from what we understand to be the true object of the court.' In the instant case we have done nothing more than to state cogent reasons, not advanced by counsel, to sustain an assignment, properly made and presented, to the effect that reversible error was committed in the giving of the appellee's sixth instruction."

The case of *Old First National Bank and Trust Company v. Scheuman*, (1938) 214 Ind. 652, 13 N.E.2d 551, is relevant to the case at bar on the question of whether an issue is properly raised and reviewable. There, the trial court made an order regarding dividends in a bank receivership. On appeal, the court recited four rules used to determine the question: (1) the Bankruptcy rule, (2) the Maryland rule, (3) the Illinois rule, and (4) the chancery rule. In argument, appellant favored the Illinois rule, while appellee favored either the Illinois or chancery rule. The court applied the Bankruptcy rule, and the contention was made, since neither party advocated the Bankruptcy rule, its validity was not before the court. In reflecting upon the contention, the court said:

"We can not agree to this proposition. The basis upon which the dividends are to be computed is before us and the court must determine the rule to be followed."

214 Ind. at 675, 13 N.E.2d 551. In *White v. White*, (1935) 208 Ind. 314, 194 N.E. 355, a garnishment was issued without notice to appellant, who, upon learning of it, appeared and filed a motion to quash on the basis of due process, which was overruled. The Supreme Court, in reversing, held the garnishment was bad because the statute was unconstitutional. Upon rehearing, it was argued that the only ground upon which the garnishment was attacked was due process. The Supreme Court said:

> "Notwithstanding the failure of counsel to present the question, the court may consider and decide a question presented by the record, and may go outside the briefs of counsel for reasons upon which to base the decision in order to do justice to the parties.
>
> In the instant case, the law, upon which the garnishment execution was based, had been held to be void. Justice requires the lower court to sustain the motion to quash the summons." (Footnotes omitted.)

In *Cunningham v. Hiles* (1980) Ind.App., 402 N.E.2d 17, 20, in a footnote of a rehearing petition opinion, the court stated:

> "3. In his Petition for Rehearing, Hiles has suggested that this Court granted relief 'substantially different' than that relief requested by Homeowners in their appeal. The relief which may be granted by this Court is coextensive with that relief which a trial court may grant under Ind. Rules of Procedure, Trial Rule 59(E). Ind. Rules of Procedure, Appellate Rule 15(M); *State ex rel. Schmal v. Lake Superior Court* (1975), 264 Ind. 73, 339 N.E.2d 58. Among the various types of relief enunciated in TR. 59(E) is the entry of final judgment when such relief is not 'impracticable or unfair.' Here, the parties fully litigated the question of the enforceability of the covenant at trial. No purpose would have been served by a new trial. It is well settled that the relief granted by this Court need not be identical to the relief requested by the parties. *McConnell v. Thomson* (1937), 213 Ind. 16, 11 N.E.2d 183. 'It is the province of this Court to dispose of cases whenever possible by granting appropriate relief.' *McCarthy v. McCarthy* (1971), 150 Ind.App. 640, 276 N.E.2d 891, 897."

In the case at bar, the sole underlying question was deficiency which necessarily involved the sale, and the parties raised and argued aspects of the sale. Therefore, the issue was before us for decision. The parties themselves considered it an issue in their briefs, and thus, the objections stated in *Sandefur, supra*, and *Morgan County REMC, supra*, are satisfied. As stated in *Scheuman, supra*, we are not bound by the argument of counsel.

■ Argument is made that since no supersedeas bond was filed or order to stay requested, or granted, Homemakers had a right to sell the property. In another footnote in *Cunningham, supra*, at 21, the court stated:

> "We note that the essence of Hiles' argument is (1) that he was entitled to build the music store because Homeowners did not file a supersedeas or appeal bond, and (2) consequently, the fact that he did construct the building cannot now work against him. Hiles has not shown this Court that Homeowners were required to seek an appeal bond or otherwise stay enforcement of the denial of the injunction pending the outcome of their appeal. Nor do the commentators suggest that Homeowners had such a duty. Harvey, 4 Indiana Practice Inc., 62.1 et seq., pp. 280–296 (1971); Wiltrout, 3 Indiana Practice § 222 p. 84 (1967). In other words, Hiles built the music store at his peril."

Here, Homemakers sold the property privately at its peril to one of its own officers for an undisclosed price. The matter of the deficiency is not before us, and we shall limit our decision to denying the motion for rehearing.

Rehearing denied.

RATLIFF, P. J., and ROBERTSON, J., concur.